## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

UNIVAR, INC., a Delaware corporation

       Plaintiff,

   Vs.

                                      Civil Action No. _____

RICHARD J. GEISENBERGER, in his capacity as the Secretary of Finance for the State of Delaware; BRENDA R. MAYRACK, in her capacity as the State Escheator of the State of Delaware and MICHELLE M. SULLIVAN, in her capacity as the Assistant Director for the Department of Finance for the State of Delaware,

       Defendants.

## VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Univar, Inc. ("Univar" or "Plaintiff") brings this action for declaratory judgment and injunctive relief pursuant to 28 U.S.C. §§ 2201-02 and 42 U.S.C. § 1983. In support of its claims, Plaintiff would respectfully show the following:

## NATURE OF THE PROCEEDING

1.     Univar seeks a declaration that the State of Delaware, through its agent and auditor, Kelmar Associates, LLC ("Kelmar"), has subjected, and continues to subject, Univar to an unclaimed property audit ("Audit") under 12 Del. C. § 1171 *et seq.* that (1) infringes on Univar' right under the Fourth Amendment to the United States Constitution to be free from unreasonable searches and seizures; (2) deprives Univar of its substantive due process rights under the Fourteenth Amendment to the United States Constitution; (3) deprives Univar of its procedural due process rights under the Fourteenth Amendment to the United States Constitution; (4) has subjected Univar to an unconstitutional taking of private property for public

use without just compensation; and (5) has violated Univar's Fourteenth Amendment right to equal protection of the laws.

2.      Univar also seeks a declaration that Delaware's retroactive application of 12 Del. C. § 1176, as amended in July of 2010 and again on February 2, 2017, to allow the State Escheator to estimate a holder's liability when the holder has failed to maintain adequate records when Delaware law did not require the holder to maintain records during the period covered by the audit, is a violation of the Constitution 's Ex Post Facto and Due Process Clauses. *See* U.S. Const. art. I §10, Amend. V, Amend. IV, Amend. XIV

3.      Univar also seeks a declaration that the estimation methodology codified in Section 2.18 of 12 DE Admin. Code § 104 also violates the Due Process Clause because the estimation methodology is not based on the holder's actual unclaimed property records as required by *Texas v. New Jersey*, 379 U.S. 674 (1965) and leads to significantly misleading results.

4.      Univar also seeks a declaration that Delaware's use of Kelmar in a multistate audit, where Kelmar simultaneously represents multiple states in an unclaimed property audit of the same audit subject, constitutes a violation of the Due Process clause of the Constitution because it not only exposes the confidential and proprietary records of a holder of unclaimed property to public inspection due to the conflicting public records laws of the multiple participating states but also violates the unclaimed property laws of the participating states as they apply to the confidentiality of unclaimed property records produced during an examination.

5.      Univar also seeks a declaration that Delaware's contingent-fee compensation arrangement with Kelmar constitutes a violation of Univar's due process rights because Kelmar

ME1 28739883v.1

is the real party in interest that selects the audit subjects and performs all legally significant audit tasks and assessments, which results in Univar submitting a dispute to a self-interested party.

6.      Lastly, Univar seeks a temporary and permanent injunction, enjoining the Delaware Defendants and Kelmar from further violating its constitutional rights.

## THE PARTIES

7.      Univar is a public corporation organized under the laws of the State of Delaware, with its principal place of business in Downers Grove, Illinois. Univar was formed as a Delaware corporation on November 11, 1974.

8.      Richard J. Geisenberger is the Delaware Secretary of Finance, located at Carvel State Office Building, 820 North French Street, Wilmington, Delaware.

10.     Brenda R. Mayrack is the Delaware State Escheator, and is located at Carvel State Office Building, 820 North French Street, Wilmington, Delaware. Delaware's unclaimed property law provides that "[t]here shall be an Escheator of the State, who shall be the Secretary of Finance or the Secretary's delegate. The administration and enforcement of [Delaware's unclaimed property laws] are vested in the Secretary of Finance or the Secretary's delegate." See 12 Del. C. § 1102.

11.     Michelle M. (Whitaker) Sullivan is the Assistant Director for the Department of Finance and reports directly to, and is under the direction of, the State Escheator.

12.     Richard J. Geisenberger, Brenda R. Mayrack, and Michelle M. (Whitaker) Sullivan are collectively referred to herein as "Delaware" or "Delaware Defendants," and they can each be served with process via Matthew Denn, Esquire, Attorney General of the State of Delaware, Delaware Department of Justice, Carvel State Office Building., 820 North French Street, 6th Floor, Wilmington, Delaware 19801.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction under 28 U.S.C. § 1331, as this case presents claims that arise under the laws and Constitution of the United States.

14.     Venue is proper pursuant to 28 U.S.C. § 139l(b)(l) and (2) because four Defendants reside in the district and a substantial part of the events giving rise to the claims at issue occurred in this district.

15.     This Court has the authority to enter a declaratory judgment and award injunctive relief under 28 U.S.C. §§ 2201-02.

## STANDING AND RIPENESS

16.     Univar has standing under 28 U.S.C. § 1331 and its claims are ripe under the legal standards set forth in *Plains All American Pipeline, L.P. v. Cook*, 866 F.3d 534 (3rd Cir. 2017).

## FACTUAL ALLEGATIONS

**Overview**

17.     Over the past several years, the State of Delaware, along with its agent and auditor, Kelmar, which is retained by the State of Delaware on a contingent fee basis, has transformed Delaware's Abandoned and Unclaimed Property Law, 12 Del. C. § 1130 *et seq.* ("DUPL"), from a statute originally designed to protect property holders by transferring actual unclaimed property to the State to be held in trust for the benefit of the actual owner, to a statute that mainly serves to provide a source of revenue for the state. Rather than focus on specific, identifiable property that has not been claimed by its actual owners, Defendants instead require large companies, like Univar, to submit to wide-ranging, lengthy Audits going back at least 27 years in the past.[1] In these Audits, Kelmar first determines the size of the target company to

---

[1] Plaintiff notes that Delaware amended the DUPL as of February 2, 2017 such that the look-back period applicable to Notices of Examinations issued by Delaware after February 2, 2017 is 10 years plus the applicable dormancy

determine how much revenue it may be able to collect, and second, goes back as many years as possible in time to try to recover what it can because it is paid a contingent fee based on the size of the recovery.

18.     Delaware Defendants and Kelmar require audited companies to submit to audits going back at least 27 years, and if those companies do not have records supporting their unclaimed property reports for all those years - records they were never required to keep by law or otherwise - Defendants use an arbitrary estimation methodology to determine the amount of unclaimed property they guess, but do not know, those companies may have had during the audit period.

19.     These estimations are not tied to actual property - they are pure guesses and speculations. Defendants do not seek to have Univar or other holders turn over specific property for which no owner is known or no address is known; rather, Defendants seek to have them simply pay an arbitrary amount they speculate might be owed if the unknown information was in fact known.[2]

20.     The practice by Defendants, and their for-profit collection agent, Kelmar, is a practice that has been addressed and strongly criticized by some commentators.

> As a preferred state of incorporation, Delaware is particularly active in pursuing unclaimed property audits. Moreover, unlike some states, Delaware deposits all unclaimed property collections directly into the state's general fund. According to the Delaware Fiscal Notebook, the state's unclaimed property collections rose from $106 million in 1998 to $493 million in 2010. In fact, unclaimed property assessments are the third largest source of revenue for the state, accounting for approximately 15% of total revenue-more than the state lottery, and more than corporate

---

period.  Univar received its Notice of Examination on December 11, 2015 and is therefore subject to the DUPL in effect on December 11, 2015.

[2] Delaware codified Kelmar's estimation formula in its unclaimed property regulations effective as of October 11, 2017.

income taxes, cigarette taxes, alcoholic beverage taxes, and inheritance taxes combined.

\* \* \*

In a 2010 working paper, the Washington Legal Foundation issued a warning to businesses incorporated in Delaware, stating: "[T]he Delaware Division of Revenue ... is a tough adversary and auditor of companies' unclaimed property liabilities, as evidenced by penalties and interest that often equal up to 75 percent of an unclaimed property assessment. The Division is also creative at identifying other items that it contends are unclaimed 'property.' Because Delaware provides no statute of limitations defense for a holder that has not filed Delaware unclaimed property reports, the Division's unclaimed property audits routinely cover all years back to 1981 (the year Delaware enacted its unclaimed property statute), or to the year the holder was incorporated or organized in Delaware if more recent."

Chris Hopkins & Matthew Hedstrom, *Unclaimed Property Laws: Custodial Safekeeping or Disguised Tax?,* 21 JOURNAL OF MULTISTATE TAXATION AND INCENTIVES 9 (January 2012).

21.     On December 11, 2015, Defendants notified Univar that Univar is the subject of an unclaimed property Audit to be conducted by Kelmar. Kelmar sent Univar initial requests for production of documents - a procedure that is unauthorized and unconstitutional - and Univar promptly objected in writing to these requests, due to the lack of state law protections for the confidentiality of its records, to Kelmar's self-interest in the audit, to the estimation process, and to various other aspects of the Audit process. Defendants have rejected and/or ignored all of Univar's objections.

22.     Over the course of the next two and one-half years, Univar continued to raise its objections to Delaware and Kelmar in writing.  Defendants continued to reject and/or ignore all of Univar's objections.

6

23.     Instead of addressing Univar's written objections, on October 30, 2018, under a provision of the DUPL that was enacted on February 2, 2017, the Delaware Defendants issued a subpoena for records of Univar pursuant to Kelmar's standard initial information request (the "Subpoena"). See 12 Del. C. § 1171(3).

24.     Univar contends that the document requests issued by Kelmar in connection with the Audit exceed those permissible under the Fourth Amendment. The DUPL does not provide for any pre-enforcement court review and the Delaware Defendants have threatened Univar with penalties by issuance of the Subpoena if Univar does not comply or cooperate, apparently including any attempt by Univar to assert its constitutional rights.

25.     Furthermore, because Delaware and Kelmar are conducting a "multistate" Audit of Univar,[3] the confidentiality of any records that Univar would provide to Delaware and Kelmar is not guaranteed.  In fact, by providing the records to Delaware and Kelmar, Univar is forced to expose its records to public disclosure under the public records laws of some of the Participating States.[4] Delaware's threat of penalty for failure to turn over private records that will not be kept confidential constitutes a violation of Univar's substantive due process rights and constitutes an illegal search under the Fourth Amendment.

26.     Moreover, Delaware's DUPL prohibits Delaware from sharing an audit subject's confidential information with any state that lacks confidentiality provisions that are "substantially similar" to Delaware's confidentiality provisions. Accordingly, by providing a holder's confidential information to Kelmar, when Kelmar represents multiple states that do not

---

[3] The 20 states participating in the audit are: Delaware, Florida, Minnesota, Illinois, Maryland, Louisiana, Indiana, Idaho, Tennessee, Arkansas, New Mexico, Utah, Virginia, Rhode Island, Wisconsin, Massachusetts, Pennsylvania, South Carolina, California and New York (hereinafter, the "Participating States").

[4] By way of example, the public records laws of CA, WI, MN, MA and SC provide that any information received by a government contractor in performance of a government function constitute public records that must be disclosed in connection with a valid Freedom of Information Act Request. See, Cal. Gov. Code § 6252(e); Cal Code Civ. Proc. §§ 1573,1582; See also, Wis. Stat. 19.36(3); Minn. Stat. § 13.03; ALM GL ch. 66, *et seq.*; S.C. Code Ann. § 30-4-20 *et seq.*  Copies of cited statutes attached as **Exhibit B**.

ME1 28739883v.1

have substantially similar confidentiality laws to protect records produced in an audit, Delaware is violating its own law.  See 12 Del. C. §§ 1174, 1189 (2018).

27.    The Kelmar estimation process relies on the use of the holder's prior unclaimed property filings for states that are not participating in the audit, which constitutes a violation of Univar's substantive due process rights because it will impermissibly subject Univar to multiple liabilities for the same unclaimed property.[5]

28.    The estimation process violates Univar's substantive due process rights and constitutes an unconstitutional taking of private property for public use without compensation because, as described above, it involves the taking of Univar's own property rather than a transfer of other individuals' property to be held in trust by the State of Delaware. The retroactive application of penalties and estimates of liability based on a failure to keep records that were not previously required by law to be kept also violates Univar's due process rights.

29.    Delaware's employment of Kelmar on a contingent-fee basis requires Univar to submit a dispute to a self-interested party, which is a violation of Univar's procedural due process rights.  In all legally significant respects, Kelmar is the party conducting the Audit, issuing the information requests and recommending audit findings to Delaware and the Participating States, which are rubber-stamped by those parties.

30.    The method of selecting Univar as a target for an unclaimed property Audit violates Univar's Fourteenth Amendment right to equal protection of the laws because Defendants chose Univar as a target based on its perceived profitability and not based on neutral criteria or any criteria bearing a rational relationship to a legitimate governmental interest. The entire Audit process is unconstitutional, both facially and as it has been applied to Univar, and

---

[5] See, *Temple-Inland*, *supra*.  The Delaware's DUPL did not provide the state with the requisite authority to request prior unclaimed property filings in states not participating in an unclaimed property audit until after February 2, 2017.

ME1 28739883v.1

Univar accordingly seeks this Court's protection from Defendants' unconstitutional and impermissible acts.

**Delaware's Unclaimed Property Law and Amendments**

31.     Each of the fifty states and the District of Columbia has "unclaimed property" or "escheat" laws that require companies holding unclaimed property, whether tangible or intangible, to turn that property over to the state. In general, the states do not take title to the property, but instead hold it as custodians and use it for the benefit of the general public until the true owner comes forward to claim the property.

32.     Most states, with the exception of Delaware and a few others, model their unclaimed property laws after the Uniform Unclaimed Property Act ("UUPA") or the Revised Uniform Unclaimed Property Act ("RUUPA").  The original version of the DUPL was effective as of January 1, 1981.

33.     In *Delaware v. New York,* 507 U.S. 490 (1993) and *Texas v. New Jersey,* 379 U.S. 674 (1965), the United States Supreme Court established choice of law rules to resolve conflicting claims of different states to intangible unclaimed property, such as uncashed checks. Under the "primary rule," the power to escheat intangible property is determined by the law of the state of the creditor's last known address (often the payee of a check) as recorded on the books and records of the debtor (the obligor of the debt underlying the check). If the debtor does not have the name and address of the owner/creditor on its books and records, the property escheats according to the law of the debtor's state of domicile under the secondary rule.

34.     By operation of the "secondary rule," Delaware, as the state of incorporation/formation to over one million legal entities, has the right to escheat hundreds of millions of dollars of unclaimed property every year. Specifically, whenever a Delaware

company is holding intangible unclaimed property, such as uncashed checks, uncashed dividends, lost stock certificates, unapplied credits, or unused rebates, Delaware has the right to take possession of that property when the company's records do not reveal the debtor's "last known address" and the applicable dormancy period has expired.

35.   The DUPL has undergone significant amendment since 2010.  Section 1155 of the DUPL was amended by the State Escheator in 2010 to add a provision allowing the State Escheator to use reasonable estimation techniques in unclaimed property examinations when the holder did not have records for periods covered by the examination.

36.   The DUPL was amended and overhauled effective February 2, 2017 in large part to attempt to address due process concerns identified by this Court in *Temple-Inland v. Cook*.[6] After the DUPL was amended, Delaware also issued regulations entitled "104 Department of Finance Abandoned or Unclaimed Property Reporting and Examination Manual" enacted on October 11, 2017 (the "Regulations") to amplify the amended DUPL.  See 12 DE Admin. Code § 104.

37.   The Regulations are ambiguous as to how the Regulations apply to Audits that were noticed prior to the effective date of the Regulations and Delaware has issued no additional guidance on how a holder is to determine how the Regulations apply to Audits that were "ongoing" prior to the effective date.  Section 2.3 of the Regulations, entitled "Effective Date" reads:

> The effective date of these Regulations shall be the date they are adopted, and the standards contained therein shall apply to all examinations commenced *after* that date. *To the extent practical, the Regulations shall apply to any ongoing examinations that commenced prior to the effective date of these Regulations*, though the failure of the State to have conformed to a Reporting and Examination Manual not-yet-in-existence would not invalidate an examination. (emphasis added)

---

[6] 192 F.Supp.3d 527 (D. Del. 2016).

**Audits, Document Retention, and Estimation**

38.     Section 1171 of the DUPL provides that "[t]he State Escheator may at reasonable times and upon reasonable notice examine the records of any person or business association or organization to determine whether the person has complied with any provision of this chapter[.]"[7]

39.     Unlike the unclaimed property laws in most states, the DUPL, prior to February 2, 2017, did not provide a set "look-back" period for audits.[8] In 2017, the DUPL was amended to prohibit Delaware from conducting examinations or investigations "for any period more than 10 years prior to when property is presumed abandoned under this chapter from the calendar year in which the State Escheator provides written notice of such examination. . ." See 12 Del. C. § 1172(h).

40.     Prior to February 2, 2017, the DUPL did not require and has never required holders to keep records for a minimum period of time and/or keep records of owners' addresses. The current version of the DUPL imposes a 10-year look-back period and record retention requirement applicable to Audits noticed and commenced after February 2, 2017.

41.     In February of 2017, the DUPL was amended to give the State Escheator the authority to estimate a holder's liability for allegedly unreported unclaimed property using a "reasonable method of estimation based on all information available to the State Escheator, including extrapolation and the use of statistical sampling when appropriate." [9] The 2017 amendment followed a similar amendment in July of 2010 which permitted the State Escheator

---

[7] Prior to February 2, 2017, this provision was codified in Section 1155 of the DUPL.
[8] In 2012, the State Escheator passed a regulation that purported to give the State Escheator authority to look-back to January 1, 1981 in an unclaimed property examination.
[9] 12 Del. C. § 1176(a). Prior to February 2, 2017, the then-existing DUPL was amended in July of 2010 by Senate Bill 272 with language similarly granting Delaware with the authority to use estimation.

11

to reasonably estimate liability in an examination when the holder's books and records were insufficient.

## Retroactive Application of Estimation Authority Despite Lack of Record-Retention Requirement

42.     The Delaware Defendants take the position that Section 1176 (and prior to February 2, 2017, the 2010 amendment to Section 1155) apply retroactively to unclaimed property Audits, despite the fact that prior to February 2, 2017, the DUPL contained no record retention requirement.[10] Consequently, because Univar does not have sufficient records to prove its compliance for each year going all the way back to 1991, Kelmar will use its unlawful estimation methodology to estimate the amount of unclaimed property that Kelmar believes Univar should have reported during those years.

43.     To estimate a holder's liability for past years, Defendants first identify the holder's actual unclaimed property in recent years for which records exist, including (1) unclaimed property that was actually reported and paid to Delaware; (2) actual unclaimed property that should have been reported and paid to Delaware; (3) unclaimed property that was actually reported and paid to other states; and (4) actual unclaimed property that should have been reported and paid to other states. Defendants add these amounts together and divide the sum by the holder's total revenue during those same years. This produces what Defendants refer to as the holder's "escheat error-rate." Defendants multiply the escheat error-rate by the holder's total revenue during past years for which records are no longer available. This becomes the holder's estimated liability (the "Estimated Liability Amount"), which is purely a speculative number.

---

[10] See, Section 2.3 of the Department of Finance Abandoned or Unclaimed Property Reporting and Examination Manual, which states that Delaware's unclaimed property regulations, enacted October 11, 2017, apply to existing examinations "to the extent practical."

ME1 28739883v.1

This Court has already determined that this estimation process produces "significantly misleading results."[11]

44.    Because the Estimated Liability Amount is not based on actual records, only previously reported property and total annual revenue, the unclaimed property that Defendants estimate conveniently is not tied, and cannot be tied, to a particular owner, and so the holder's records cannot reveal a last known address because there is no, and can be no, associated owner; it is all an absolute fiction designed to maximize the revenue stream to the state and Kelmar's coffers. Delaware treats the entire amount of estimated liability as owner-unknown property, which Delaware then escheats according to the secondary rule enunciated in *Texas v. New Jersey* and *Delaware v. New York.*

45.    In *Temple-Inland*, using the estimation process described in paragraph 43, Kelmar turned $147.30 of actual unclaimed property into an estimated liability of $1,388,426.67.[12]

46.    The exact estimation methodology that resulted in the "significantly misleading" results identified by this Court in *Temple-Inland* was eventually codified in Section 2.18 of the Regulations and made effective on October 11, 2017.

47.    Estimation will be necessary in any audit of Univar because Univar admittedly does not have a standard record retention policy that causes records to be retained back to 1991. Any Kelmar estimation methodology that uses prior unclaimed property filings reported to other states will lead to misleading, inflated and unconstitutional estimated unclaimed property liabilities. See, Section 2.15.1.5 of the Regulations.

48.    In fact, upon information and belief, in situations when holders under Audit refuse to provide prior unclaimed property filings from non-participating states because Delaware lacked

---

[11] See, *Temple-Inland*, 192 F.Supp.3d 527 (D. Del. 2016).
[12] *Id.*

ME1 28739883v.1

the authority to request such records prior to February 2, 2017, Delaware is sending letters to those holders suggesting that the failure to permit Kelmar to use a "statistical sample review" will somehow negatively impact the holder.[13]

49.   The use of estimation and Kelmar's estimation methodology (now codified in the Regulations) violates Univar's substantive due process rights and constitutes an unconstitutional taking of private property for public use without compensation because it involves the taking of Univar's own property rather than a transfer of other individuals' property to be held in trust by the State of Delaware.  The retroactive application of penalties and estimates of liability based on the failure to keep records that were not previously required to be kept also violates Univar's due process rights and the Ex Post Facto Clause of the Constitution.

50.   It is notable that the "Guiding Principles" of the Regulations state that the goal of an unclaimed property examination shall be to determine whether the holder is in compliance with the Delaware abandoned or unclaimed property laws and shall relate to all property that "*may be subject to escheat*" pursuant to the DUPL. The term "escheat" is an English feudal concept that connotes the *permanent* taking of the property of absent individuals as opposed to the custodial taking of property for the benefit of true owners until they return to claim their property.[14]

**Kelmar Administration of Audit and Financial Incentives**

51.     In all material respects, Kelmar is "vested with the responsibility" of conducting unclaimed property audits on behalf of Delaware.[15] Kelmar selects audit subjects, develops and issues information requests, conducts records reviews, performs estimation calculations and makes audit findings and determinations that are then approved by Delaware.

---

[13] See **Exhibit D** for sample redacted letter to holder in reference to refusing to provide prior filing history for non-participating states.
[14] *Bernert, Edward et al.*, An Examination of Unclaimed Property Laws After the Adoption of RUUPA: Suggestions for Continued Advancement, Tax Lawyer, Vol. 71 No. 4 (2018), pages 941-974.
[15] See, *Plains All American Pipeline LLP v. Cook*, No. 16-3631 (3d Cir. 2017) at 22.

ME1 28739883v.1

52.     For its services, Kelmar receives a contingent fee based on the amount Delaware is able to recover from the companies that it audits; the more liability that Kelmar is able to impose upon a target company, the more it gets paid. Since 2013, the Delaware Department of Finance has paid Kelmar at least **$104,421,598.50.** *See* http://checkbook.delaware.gov. That Kelmar has a self-interest in the outcome of audits it performs on behalf of the State of Delaware is not disputable and explains why Kelmar only selects the largest Delaware-incorporated companies to audit.

53.     After Delaware signs on to an Audit that Kelmar selects, Kelmar also goes out and solicits other states-which it refers to as its "clients"- to join the Delaware Audit. As more states join, the audit transforms into an amorphous, nationwide expedition led by Kelmar, with Delaware as its centerpiece. Kelmar receives a contingent-fee from each state. Prior to 2010, there were no audit procedures authorized by law – only Kelmar's own private, internal procedures-and there was no way to effectively object to Kelmar's demands or unconstitutional process. The Regulations effectively enacted procedures that conveniently mirror Kelmar's traditional audit procedures.

54.     For Delaware, unclaimed property has become the State's third largest source of revenue, bringing in approximately $475 million in the last fiscal year. Although Delaware has benefited financially from its relationship with Kelmar, its corporate friendly reputation has taken a well-publicized hit. *See* Douglas Lindholm, *Once A Friendly Locale To Business The Modern State Of Delaware Is A Bully,* FORBES, Op-ed, Mar 16, 2013, *available at* http://www.forbes.com/sites/realspin/2013/05/16/once-a-friendly-locale-to-business-the-modern-state-of-delaware-is-a-bully.

ME1 28739883v.1

**Procedural History of Delaware's Audit of Univar**[16]

55.     In a letter dated December 11, 2015, Defendant (Whitaker) Sullivan notified Univar that Delaware, through its agent, Kelmar, would be conducting an examination of Univar's "books and records," and the "books and records" of Univar's "Subsidiaries and Related Entities" (hereinafter the "Audit"). The letter states that the purpose of the Audit is to "determine [Univar's] compliance with Delaware escheat laws," and that "the scope of the examination will be for the period 1986 through present."

56.  Next, on December 22, 2015, Defendant (Whitaker) Sullivan issued a second letter to Univar stating that "the notice contained an error in paragraph two. The correct scope of the examination will be for period 1991 through present."

57.     Although the stated purpose of the Audit is to verify Univar's compliance with "Delaware escheat law," the letter instructs Univar to "have available all of Univar prior years' reports of unclaimed property and supporting documentation for ***all states[.]***" (emphasis added) The letter further states that the Assistant Director, Defendant (Whitaker) Sullivan, is the "final arbiter of any disputes that may arise during the course of the examination."

58.     Coincidentally, between December 11, 2015 and March 9, 2018, Kelmar solicited an additional nineteen (19) states to join Delaware's Audit of Univar. Each of these states sent Univar a letter notifying it that Kelmar would be conducting the Audit as the state's agent.

59.     On or about December 23, 2015, Univar, through its counsel sent a response to the Notice of Examination to Delaware and Kelmar outlining several concerns regarding the Audit notice, including concerns regarding Kelmar's self-interest in the outcome of the Audit as well as concerns regarding the confidentiality of Univar's records and proprietary information.

---

[16] Copies of all correspondence between Delaware, Kelmar and Univar referenced in paragraphs 53 to 73 below are attached as **Exhibit A**.

60.     On January 8, 2016, Kelmar sent Univar a copy of its Confidentiality & Non-Disclosure Agreement ("NDA"). The NDA purports to give Kelmar the ability to share Univar's confidential information with the other states that have joined the Audit.

61.     On January 29, 2016, due to the fact that Kelmar had been advised by Delaware to implement a new form of NDA instead of the form that Univar was originally provided, Kelmar sent an email to Univar's counsel describing the differences between the original NDA and the form provided on January 29, 2016.

62.     On February 29, 2016, Univar sent Kelmar additional correspondence regarding the proposed NDA and seeking clarification as to how the NDA, considering the Delaware law restrictions governing the sharing of confidential information garnered in an Audit, would permit Kelmar to conduct an Audit on behalf of multiple states due to the fact that the laws of the Participating States prohibited such sharing of confidential information without a specific written agreement among all of the Participating States.

63.     In response to the February 29, 2016 correspondence, Kelmar sent an email to Univar's counsel on May 2, 2016 demanding that Univar proceed with the "multi-state examination" despite its objections regarding confidentiality of records.

64.     Via letter dated May 16, 2016, Univar responded to Kelmar, reiterating its position that the laws of the Participating States did not authorize the sharing of confidential information among the Participating States such that a multi-state Audit could be lawfully performed by a single auditor and noting that neither Delaware nor any Participating State had provided any explanation or legal justifications demonstrating their ability to lawfully conduct a multi-state Audit.

ME1 28739883v.1

65.     Next, on July 12, 2016, Kelmar sent an email to Univar's counsel suggesting that, to address Univar's confidentiality concerns, instead of a multistate Audit, Kelmar would conduct 17 separate audits simultaneously using the same Kelmar audit team, noting that the exams will be conducted in accordance with the respective state laws and contracts governing each individual Audit.

66.     Subsequently, on September 23, 2016, Kelmar sent Univar 17 separate emails announcing Kelmar's intent to conduct 17 separate Audits.  Each of the 17 emails came from the same Kelmar representative, Lindsay Guiseppe, and indicated that Ms. Guiseppe and her team would conduct each of the "separate" Audits.  Each of the 17 emails included Kelmar's standard initial information request tailored to that Participating State.

67.     In response to Kelmar's July 12, 2016 communication and the September 23, 2016 emails from Lindsay Guiseppe, Univar sent correspondence to Kelmar dated October 12, 2016, explaining that use of the same Audit team to conduct "separate audits" was no different than conducting a single, simultaneous multistate Audit and that it was Univar's position that the confidentiality provisions of the unclaimed property laws of Delaware and the Participating States prohibited the Audit from being conducted in this manner.

68.     Kelmar responded to Univar's October 12, 2016 communication again dismissing Univar's confidentiality concerns, questioning the legal justification for Univar's confidentiality concerns and threatening to "report Univar's continued delay to the authorizing states."

69.     Univar again responded via letter dated December 1, 2016, reiterating its objections to Kelmar's proposed resolution of 17 separate Audits being conducted by the same audit team.  Univar offered to proceed with the Audit with Delaware as the only Participating State.  In addition, Univar noted that it could not afford to waive any of its legal rights by

voluntarily complying with an unlawful audit request as described in and permitted by *Marathon Petroleum Corporation v. Delaware*.[17]

70.     Univar next received correspondence from Kelmar on May 9, 2018.  In that correspondence, Kelmar announced the addition of three (3) new states to the Audit and also claimed that a new version of NDA that had been approved by Delaware that "addresses in more detail concepts identified previously as concerns by Univar."  Kelmar also noted that the dismissal of the *Plains All American Pipeline* lawsuit as a development that changed Univar's legal position with respect to its confidentiality concerns.

71.     Univar responded to Kelmar's March 9, 2018 email via letter dated May 21, 2018. In that correspondence, Univar reiterated its position that the NDA did not address its confidentiality concerns regarding the protection of its confidential and proprietary information. In addition, in light of the recent *Delaware v. Arkansas* lawsuit[18] that was pending in the Supreme Court of the United States, Univar raised additional concerns regarding the public records laws of the Participating States as they apply to records obtained by government contractors in the performance of government functions.[19]

72.     Univar next received correspondence from Defendant (Whitaker) Sullivan on behalf of Delaware on July 31, 2018.  Defendant (Whitaker) Sullivan's correspondence was a demand that Univar comply with Delaware's initial audit demand, summarily dismissing Univar's legal concerns.  Defendant (Whitaker) Sullivan's correspondence characterized the Audit as "inexcusably delayed" despite the fact that Univar had repeatedly raised its

---

[17] (filed) Civ. Action No. 16-80-LPS filed February 11, 2016 (Dist. Delaware); (decided) 876 F.3d 481 (3rd Cir. 2017).
[18] *Delaware v. Pennsylvania and Wisconsin*, Supreme Court Docket No. 22O145 (May 31, 2016) and *Arkansas, et al. v. Delaware*, Supreme Court Docket N. 22O146 (June 13, 2016). See Protective Order Request and Protective Order issued by Judge Leval attached as **Exhibit C**.
[19] See also, *State Org. of Police Officers v. Society of Professional Journalists-University of Haw. Chapter*, 927 P.2d 386, 413-414(citing authority from various jurisdictions determining that private confidentiality agreements do not take precedence over state statutes governing public records disclosures).

ME1 28739883v.1

constitutional and confidentiality concerns with Delaware and Kelmar. Defendant (Whitaker) Sullivan's July 31, 2018 letter offered no explanations or legal justifications regarding the confidentiality concerns (or any other legal issues) that Univar had raised with Delaware and Kelmar between December 23, 2015 and May 21, 2018.

73.    Univar responded to Defendant (Whitaker) Sullivan's demand letter on September 4, 2018.   In that correspondence, Univar again outlined its constitutional, confidentiality and public records concerns and respectfully requested responses or explanations to the concerns that had been raised. In addition, Univar specifically requested that Delaware clarify which version of the DUPL would apply to an audit of Univar, due to the fact that Univar received its Notice of Audit on December 11, 2015 and the DUPL was amended effective February 2, 2017 and the Regulations were adopted and effective October 11, 2017.   Univar noted in its correspondence that the Regulations ambiguously state that they are applicable to Audits that were "ongoing" prior to October 11, 2017 "to the extent practical." Thus, how the Regulations would be applied to an audit that was noticed prior to the effective date of the Regulations was an important and legitimate question to be resolved, considering the Regulations adopted an estimation methodology that was deemed "significantly misleading" in *Temple-Inland*.

74.    Instead of responding to Univar's September 4, 2018 correspondence, Delaware issued the Subpoena dated October 30, 2018.

75.    The Subpoena requests all information that appears in Kelmar's standard initial document request, information that Kelmar uses to determine which of Univar's subsidiaries, related entities and affiliates will be the most lucrative audit targets, as follows:

- <u>Tax Returns</u> **-** Provide the following sections of the 2014 filed Federal Form 1120 for Univar, Inc., including: **(i)** Form 1120, pp. 1 to 5. (ii) Form 1125-A Cost of Goods Sold, (iii) Form 851 Affiliations Schedule.

- <u>Consolidating Income Statement</u> (including elimination columns) which reconciles to page 1 taxable income, listing P&L activity by line item broken out by legal entity (with legal entity name, FEIN, state and date of formation/incorporation).

- <u>Consolidating Balance Sheet</u> (including elimination columns), which reconciles to Schedule L - Balance Sheets per Books, listing all Balance Sheet line items broken out by legal entity (with legal entity name and FEIN).

- Consolidating Cost of Goods Sold schedule, which reconciles to Form 1125-A, broken out by legal entity (with legal entity name and FEIN).

- <u>Detailed State Apportionment Schedules</u> **-** Provide the consolidated sales, property, and payroll state tax apportionment detail for **all states** for Univar, Inc. and affiliates for tax year 2014 (used in preparation of the corporate state income tax returns).

- <u>Cash Managers, Shared Services Entities, Common Paymaster Entities</u> **-** Provide a list of all legal entities from the 2014 corporate organizational chart which pay liabilities (e.g. A/P, payroll, rebates, or refunds) on behalf of other legal entities. For each entity identified, provide a list of all entities involved in the arrangement, and the date that each entity began participating in the arrangement.

- <u>G/L Numbers and Account Numbers</u> - Further, for each entity paying liabilities on behalf of other legal entities, provide the general ledger account number, and bank account number for the primary check disbursement account(s) in each property category (i.e., for A/P, payroll, rebates, or refunds). Bank records and check registers

for these accounts will be requested later, but we encourage you to begin gathering records at this time.

- Prior Audits or VDAs - Provide copies of reports and work papers, including demands for payment and release agreements, from any prior unclaimed property audits or Voluntary Disclosure Agreements with the [Participating States].

76.     The DUPL provides administrative remedies for review of audit assessments but the review does not comport with due process because the procedures do not contemplate a *de novo* review of the audit itself. The Court of Chancery's review of the agency's determination of amounts due and owing is limited to consideration of whether the independent reviewer's decision was supported by substantial evidence in the record. The Court of Chancery is not accorded any power to determine whether the record was improperly affected by unconstitutional procedures or denials of due process.

## COUNT I
### (Unreasonable Search and Seizure)

77.     Univar repeats and realleges the foregoing paragraphs as if fully set forth herein.

78.     The Fourth Amendment to the U.S. Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated ...."*See* U.S. Const. amend. IV.

79.     While acting under color of state law, the Delaware Defendants and Kelmar have subjected and continue to subject Univar to an unreasonable search and seizure.

80.     Delaware's unclaimed property audit is an unreasonable, warrantless search and seizure of Univar's non-public documents that is not permissible under the Fourth Amendment. Kelmar has sent a letter demanding that Univar prepare and send certain documents to Kelmar - a demand for records that was not authorized by statute at the time the demand was issued.

ME1 28739883v.1

81.     Neither Delaware Defendants nor Kelmar have obtained a warrant, nor do they meet the standards for a warrant in an administrative examination. A warrant in an administrative examination can only be issued if there is (1) specific evidence of an existing violation of the law or regulations by the target of the warrant or (2) some kind of reasonable, neutral statutory or administrative standards or plan for choosing targets or deciding on a schedule of examinations. These standards must be met prior to the issuance of a warrant; after-the-fact justifications do not suffice. Here, there is no specific evidence that Univar violated the DUPL, nor is there any statutory or administrative plan of any kind by which targets are chosen through application of neutral criteria.

82.     To the extent the examination is in the nature of an administrative subpoena, to comply with the Fourth Amendment, an administrative subpoena must be: (1) authorized for a legitimate government purpose; (2) limited in scope to reasonably relate to and further the legitimate government purpose; (3) sufficiently specific that it is not unreasonably burdensome; and (4) not overly broad so that it is oppressive.

83.     Here, the document request is not authorized by law; the scope of the actual request goes beyond information reasonably related to any legitimate interest Delaware has; the statute contains no limitation on the scope of the requests; and the actual requests are overly broad so as to be oppressive. None of the elements are satisfied, and the examination violates the Fourth Amendment.

84.     To the extent the statute permits the issuance of a document request and the Subpoena, it is unconstitutional on its face because this power is not limited to books and records relevant to the enforcement of the DUPL, and it does not require specificity. 12 Del. Admin.

Code § 104-2.15.1.5 states that records requests "may include, without limitation . . ." any records of the holder that the State of Delaware or Kelmar deem relevant.

85.     The "scoping" phase of the Audit was not authorized by the DUPL prior to February 2, 2017, because its purpose is not to determine whether Univar, Inc., a Delaware corporation, has complied with the DUPL.  The sole purpose of the scoping phase is to determine which related entities and subsidiaries of Univar, most of which are not domiciled in Delaware, have sufficient annual revenue to justify a Kelmar fishing expedition.

86.     Kelmar's initial document requests are not reasonably relevant to the authorized inquiry under Section 1171 *et seq.*

87.     Defendants' demand that Univar produce unclaimed property reports filed in other states is not relevant, let alone *reasonably* relevant, to the authorized inquiry under Section 1171.

88.     Further, until February 2, 2017, Defendants did not have authority to issue an administrative subpoena or document request for unclaimed property records for the period 1991 to 2010, and their request is therefore unlawful and unauthorized as it pertains to records for periods prior to February 2, 2017.

89.     Requiring Univar to accede to Defendants' unreasonable and unconstitutional demands will cause Univar to incur the burden of locating, reviewing, and paying for copying and shipping the documents. Furthermore, and critically important, requiring Univar to comply with these demands will also subject Univar's confidential and proprietary business documents, as well as privileged documents, to be viewable by the public.  The Audit immediately will interfere with Univar's day-to-day operations for a period of at least three (3) to five (5) years.

90.     Threatening Univar with a penalty for asserting its Fourth Amendment rights is also impermissible.

ME1 28739883v.1

91.     Univar is entitled to a judgment pursuant to 42 U.S.C. § 1983 declaring that the Audit violates its Fourth Amendment right to be free from unreasonable searches and seizures.

## COUNT II
### (Substantive Due Process)

92.     Univar repeats and realleges the foregoing paragraphs as if fully set forth herein.

93.     The Due Process clause of the Fourteenth Amendment to the U.S. Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." *See* U.S. Const. amend. XIV, § 1.

94.     While acting under color of state law, Defendants have deliberately, arbitrarily, and unreasonably abused their power by (1) subjecting Univar to a costly unclaimed property audit that covers a period of 27 years and (2) ordering Univar to submit to a multi-state audit led by Kelmar that does not adequately protect Univar' confidential business information.

95.     At all times, Defendants have acted without a legitimate government purpose.

96.     The only possible justification for a 27-year "look-back" period is to allow Kelmar and the State Escheator to unfairly penalize Univar for a lack of records by "estimating" its liability. This is not permissible because Univar was not required by Delaware law to retain the records for which it is now being penalized.

97.     The only possible justification for a multistate audit is to benefit Kelmar's private economic interests. If Kelmar ultimately asserts that Univar is holding unclaimed property escheatable to other states, Delaware would have absolutely no interest in that property.

98.     Univar has a protectable property interest in records it is being asked to produce, the money that it will have to spend, and the corporate resources that it will have to use, if it is forced to comply with Delaware and Kelmar's limitless, irrational and arbitrary Audit.

99.    Univar also has a protectable property interest in the confidential business information that it will have to disclose to Kelmar during the Audit, and which Kelmar intends to share with other states.  And, by virtue of Kelmar collecting confidential information and sharing the confidential information with other states, the confidential information will be subject to public disclosure through the public records laws of the other states, obligations to disclose the information which those states cannot avoid by contract. Univar also has a protectable interest in preserving the confidentiality of attorney-client and other privileged documents.

100.    Further, the retroactive application of the penalty and estimation provisions of the amended law to penalize Univar for not having records it was never required to keep violates Univar's right to due process. These provisions interfere with Univar's reasonable investment-backed expectations and attach consequences to decisions made and actions completed many years prior to the amendments to the DUPL.

101.    Univar is entitled to a judgment pursuant to 42 U.S.C. § 1983 declaring that the Audit violates its substantive due process rights under the Fourteenth Amendment.

## COUNT III
## (Procedural Due Process)

102.    Univar repeats and realleges the foregoing paragraphs as if fully set forth herein.

103.    The Due Process clause of the Fourteenth Amendment to the U.S. Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." *See* U.S. Const. amend. XIV, § 1.

104.    Univar has a protectable property interest in the money that it will have to spend, and the corporate resources that it will have to use, if it is forced to comply with Defendants' limitless, irrational Audit.

26

105.   Univar also has a protectable property interest in the confidential business information that it will have to disclose to Kelmar during the Audit, which Kelmar intends to share with other states. And, by virtue of Kelmar collecting confidential information and sharing the confidential information with other states, the confidential information will be subject to public disclosure through the public records laws of the other states, obligations to disclose the information which those states cannot avoid by contract. Univar also has a protectable interest in preserving the confidentiality of attorney-client and other privileged documents.

106.   Defendants' Audit, which will deprive Plaintiff of these legitimate property interests, does not contain adequate procedural safeguards.

107.   The Delaware Defendants have unlawfully delegated their administrative audit authority to Kelmar and have allowed Kelmar to act in a quasi-judicial capacity. During the Audit, Kelmar will decide (1) what documents must be produced; (2) which of Univar' Subsidiaries and Related entities will be audited; and (3) whether, and to what extent, estimation will be used.

108.   The Audit itself has no set procedures for objecting to unlawful information requests and there is no way for Univar to effectively object to Kelmar's demands, especially since Kelmar is purportedly acting on behalf of twenty (20) states.  Univar has objected in writing to the Audit on several occasions and Delaware and Kelmar have dismissed Univar's objections without addressing them.

109.   Kelmar has also developed its own procedures, none of which had been promulgated or sanctioned by any governmental authority prior to February 2, 2017. Permitting Kelmar, a private entity, to create its own procedures that are then enforced by the Delaware Defendants is unconstitutional and undemocratic.

110. Kelmar has a large financial stake in the outcome of the Audit and is not a neutral party. Kelmar's compensation will be contingent on the amount of unclaimed property liability that Delaware ultimately assesses against Univar. In the general ledger audits that Kelmar conducts, 80-85% of liability comes from estimation. Therefore, Kelmar's compensation in the Audit will depend largely on whether it is able to use estimation techniques.

111. Univar is entitled to a judgment pursuant to 42 U.S.C. § 1983 declaring that the Audit violates its procedural due process rights under the Fourteenth Amendment because Univar is required to submit a dispute to a self-interested.

## COUNT IV
### (Ex Post Facto Clause of the U.S. Constitution)

112. Univar repeats and realleges the foregoing paragraphs as if fully set forth herein.

113. Article I, § 10 of the U.S. Constitution provides that "No State shall . . .pass any . . .ex post facto Law . . ."

114. Delaware sent an audit notice to Univar on December 11, 2015.

115. In 2010, the § 1155 of the DUPL was amended by S.B. No. 272 to allow the State Escheator to estimate a holder's liability if the "records of the holder available for the periods subject to this chapter are insufficient to permit the preparation of a report."

116. Prior to the passage of S.B. No. 272, the DUPL contained no document retention requirements or any penalty for failing to maintain insufficient records.  Therefore, from 1991 to 2010 Univar was not required by law to maintain unclaimed property records or provide copies of prior unclaimed property filings in non-participating states in an examination, nor was it subject to penalties for failing to do so. Now, however, Univar is subject to a penalty for not having sufficient records from which Defendants can determine Univar's compliance with the DUPL. The estimation procedure is a penalty because it allows the State of Delaware to seize

property from Univar that is not actually tied to any other owner and that is not actually unclaimed.

117.    The DUPL was amended again on February 2, 2017 and the Regulations were effective as of October 11, 2017.  The amendments to the DUPL, for the first time, instituted a new and substantive record retention requirement for unclaimed property records and required holder to produce prior unclaimed property filings in other states in connection with examinations.  The Regulations codify the estimation methodologies using records that not only were not required to be kept during the audit period but that also lead to "significantly misleading results" as determined by *Temple-Inland*. These new and substantive changes in the law subject a holder to penal consequences for failing to maintain adequate records, even though the DUPL did not contain a document and record retention requirement until February 2, 2017.

118.    Defendant (Whitaker) Sullivan has made clear that the Audit will cover the period from 1991 to the present, and that Univar will be subject to estimation under Section 1171 if the Audit demonstrates that Univar has failed to maintain adequate records for that time period.

119.    Univar is entitled to judgment pursuant to 42 U.S.C. § 1983 declaring that the retroactive application of the 2010 amendments to 12 Del. C. 1155, the 2017 amendments to the DUPL, and the procedures set forth in the Regulations, including the estimation procedures of Section 2.18 of the Regulations, violates Article I, § 10 of the U.S. Constitution.

## COUNT V
### (Unconstitutional Taking)

120.    Univar repeats and realleges the foregoing paragraphs as if fully set forth herein.

121.    The Fifth Amendment to the U.S. Constitution prohibits the taking of private property for public use without just compensation. The Fourteenth Amendment to the U.S. Constitution makes this prohibition applicable to the states.

ME1 28739883v.1

122.    The estimation procedure in the DUPL will always constitute a taking of private property for public use without just compensation.

123.    The estimated amounts owed do not represent actual unclaimed property belonging to another person or an actual debtor and creditor relationship as required by federal common law; rather, the estimated amounts represent what a hypothetical holder would owe if it was holding the unclaimed property. However, the estimated amount has no rational connection to reality and forces the targeted company to pay the estimated liability not out of unclaimed property, but out of its own funds. If the holder had identifiable property belonging to another person, there would be no need for estimation.

124.    The property is taken for a public purpose, and here, the moneys received by the Defendants are deposited into the General Fund of the State of Delaware.  See 12 Del. C. § 1163.

## COUNT VI
### (Equal Protection)

125.    Univar repeats and realleges the foregoing paragraphs as if fully set forth herein.

126.    The Fourteenth Amendment to the U.S. Constitution prohibits states from denying equal protection of the laws.

127.    The DUPL contains no criteria for selection of audit targets. Rather, Kelmar and Delaware look for "large and famous" companies that they believe will produce a large amount of money for the State's General Fund. The DUPL is intended to facilitate state custody of unclaimed property so that the true owners can locate and retrieve their property. The size, wealth, and fame of the holder of the unclaimed property bears no rational relationship to the purpose of the statute.

128.     Univar has been selected for, and ordered to accede to, an unclaimed property audit under the DUPL using this non-neutral method of selection. Univar is entitled to equal protection of the laws of Delaware.

129.     Univar is entitled to a judgment pursuant to 42 U.S.C. § 1983 declaring that Defendants have violated the Fourteenth Amendment by selecting Univar for an unclaimed property audit based on non-neutral criteria.

## COUNT VII
### (Injunction)

130.     Univar repeats and realleges the foregoing paragraphs as if fully set forth herein.

131.     The manner in which the Delaware Defendants are exercising their audit authority under Section 1171 of the DUPL violates Univar's Fourth Amendment right to be free from unreasonable searches and seizures.

132.     The manner in which the Delaware Defendants are exercising their Audit authority under Section 1171 of the DUPL violates Univar's due process rights and right to equal protection of the laws.

133.     The DUPL and implementing regulations are also facially unconstitutional for the reasons stated above.

134.     The Delaware Defendants have threatened Univar with penalties, interest and contempt if it does not comply with the Audit.

135.     Univar will suffer irreparable harm if a preliminary injunction is not granted.

136.     Univar has a likelihood of success on the merits of its claims.

137.     Univar respectfully requests that the Court enter an order pursuant to 42 U.S.C. § 1983 enjoining the Delaware Defendants from continuing to pursue the unlawful Audit.

ME1 28739883v.1

## COUNT VIII
## (Void for Vagueness)

138.     Univar repeats and realleges the foregoing paragraphs as fully set forth herein.

139.     The provisions of Section 1172(a) that authorize a presumption of unclaimed property liability in the event of insufficient records and permit defendants to "use a reasonable method of estimation" are so vague as to violate Univar's due process rights under the Fourteenth Amendment and are therefore void.   The assessment of an estimate of unclaimed property that has not been proven to exist punishes the holders for the failure to maintain sufficient records and is inherently penal in nature and contrary to the federal common law set forth in *Texas v. New Jersey*.

140.     Prior to February 2, 2017, the DUPL did not explicitly and definitely require retention of records or define what records would be sufficient to preclude the use of estimation. Likewise, the DUPL, from the period 1991 to February 2, 2017, did not explicitly and definitely set forth any methodology for making a reasonable estimate of unclaimed property that is supposedly due and payable. Indeed, prior to 2010, the DUPL did not even explicitly state that holders were subject to a presumption of unclaimed property and an estimation of its amount in the event they failed to maintain sufficient records that were not required by law to be kept.  To the extent that Defendants claim that estimation is a long-standing practice, the law that supposedly authorizes estimation has always been unconstitutionally vague in this respect.

141.     The unconstitutionality of the DUPL with respect to estimation is further reinforced by Delaware's broad delegation of authority to a private, self-interested auditor. The power to define a vague law is effectively left to those who enforce it, and, as set forth herein, private auditors who enforce the DUPL operate without court oversight in a setting of unconstitutional secrecy and informality. The vagueness and standardlessness of the DUPL

ME1 28739883v.1

facilitates prejudiced, arbitrary, discriminatory and overreaching exercises of state authority by Delaware's delegates. Delaware's delegation of authority is so extensive that it has led to arbitrary and overreaching assessments of liability for unclaimed property, such as in the case of *Temple-Inland*.

142.     The vagueness of the DUPL also frustrates the judicial review of its constitutionality and the constitutionality of Defendants' audits. Defendants seek to use the statute's lack of clarity as to the circumstances in which estimation will be used and the method by which estimation will be conducted as a tool to defeat standing of parties who challenge the constitutionality of these practices.

143.     Univar is entitled to a judgment pursuant to 42 U.S.C. § 1983 declaring that Section 1172(a) is void for vagueness under the Fourteenth Amendment of the Constitution.

## <u>COUNT IX</u>
## <u>(Violation of Federal Common Law (Preemption))</u>

144.     In *Texas v. New Jersey*, 379 U.S. 674 (1965), the U.S. Supreme Court enunciated choice of law rules to (1) resolve conflicts among states over unclaimed intangible property, and (2) protect holders from multiple liabilities for the same property. The *Texas* choice of law rules constitute federal common law. A state law that conflicts with the *Texas* choice of law rules is preempted. See *New Jersey Retail Merchants Ass'n v. Sidamon-Eristoff*, 669 F.3d 374 (3d. Cir. 2012).

145.     The first step in applying the *Texas* choice of law rules is to "determine the precise debtor-creditor relationship as defined by the law that creates the property at issue." *Delaware v. New York*, 507 U.S. 490,499 (1993). After the precise debtor-creditor relationship is identified, the primary rule provides the first right to escheat to the state of the "creditors last known address as shown on the debtor's books and records." *Texas*, 379 U.S. at 680-681. If the

33

debtor's records do not contain a last known address of the creditor, the second right to escheat belongs to the state of the debtor's domicile.

146.    Section 1176 (and previously Section 1155) allows the State Escheator to "estimate the amount of abandoned or unclaimed property" a holder should have been reported if a holder does not retain records.  Section 1145 of the DUPL, effective February 2, 2017, requires a holder to retain unclaimed property records to support unclaimed property reports.  Prior to February 2, 2017, the DUPL contained no record retention requirement. Delaware is seeking to audit Univar for the period "1991 to present."

147.    Estimation under Section 1176 (and previously Section 1155) violates the *Texas* choice of law rules because it allows Delaware to escheat property (money) without ever identifying an actual debtor-creditor relationship. Without first identifying a valid debt pursuant to the law of the state of the creditor's last known address, there is no way to determine a "precise debtor-creditor relationship" making it impossible to apply the *Texas* choice of law rules.

148.    The Supreme Court has expressly held that the priority rules cannot be supplanted by "statistical surrogates."  See *Delaware v. New York*, 507 U.S. at 508-09 (holding that New York could not avail itself of the primary rule by "making a statistical showing that 'most' creditor addresses are in New York")

149.    Like most companies, Univar adheres to standard document and record retention policies and does not maintain records going back to 1991 (nor is it required to do so under any version of the DUPL).  Accordingly, any audit of Univar will involve the use of estimation.

150.    Estimation under Section 1176 (previously Section 1155) subjects holders to multiple liabilities for the same property, in violation of the Full Faith and Credit Clause of

Article IV, Section 1 of the U.S. Constitution because it is premised on the assumption that no portion of the estimated sum was previously reported to any state.

151.    In addition, since the use of estimation specifically relies on prior unclaimed property reports filed with other states, the fact that Univar will be subjected to multiple liabilities for the same unclaimed property is unavoidable. This Court in *Temple-Inland* declared the use of prior unclaimed property reports in the estimation process as a violation of the holder's due process rights.

152.    Univar is entitled to a judgement declaring that any use of estimation pursuant to Section 1176 (and previously Section 1155) conflicts with federal common law and is therefore preempted. Additionally, or in the alternative, Univar is entitled to a judgment declaring that any use of estimation pursuant to Section 1176 (or previously Section 1155) violates the Full Faith and Credit Clause of the U.S. Constitution.

## COUNT X
### (Attorneys' Fees)

153.    Univar repeats and realleges the foregoing paragraphs as fully set forth herein.

154.    Univar respectfully requests that the Court exercise its discretion to enter an order pursuant to 42 U.S.C. § 1988(b) requiring Defendants to pay Univar its reasonable attorneys' fees as prevailing party in this matter.

## PRAYER FOR RELIEF

1.    Declaring that all demands for documents and inspection/examination of documents made by Defendants to Univar as well as the audit/estimation procedures under 12 Del. C. § 1155 (and subsequently Sections 1171, 1176 and the Regulations) along with the Regulations and all Kelmar procedures violate Univar's Fourth Amendment right under the U.S. Constitution to be free from unreasonable searches and seizures;

2.    Declaring that any attempt by Delaware to apply the 2010 and 2017 amendments to the DUPL, respectively, to an audit period beginning in 1991 violates the Ex Post Facto

35

Clause of the U.S. Constitution and deprives Univar of its substantive due process rights under the Fourteenth Amendment to the U.S. Constitution;

3. Declaring that the Audit and the use of Kelmar's procedures deprives Univar of its substantive due process rights under the Fourteenth Amendment to the U.S. Constitution;

4. Declaring that Kelmar's conduct of a multistate audit that subjects Univar's confidential information to public disclosure under the public records laws of the Participating States deprives Univar of its substantive due process rights under the Fourteenth Amendment to the U.S. Constitution;

5. Declaring that the estimation procedure in 12 Del. C. § 1155 (and subsequently Section 1176 and the Regulations) violates Univar's substantive due process rights under the Fourteenth Amendment to the U.S. Constitution;

6. Declaring that the Audit, the use of Kelmar's procedures, and the audit/estimation procedures under 12 Del. C. § 1155 (and subsequently under Section 1176 and the Regulations) along with implementing regulations deprive Univar of its procedural due process rights under the Fourteenth Amendment to the U.S. Constitution;

7. Declaring that the provisions of 12 Del. C. § 1155 (and subsequently Section 1176 and the Regulations) that authorize a presumption of unclaimed property liability in the event that a holder does not maintain records that were not required by law to be kept on the bases of a "reasonable method of estimation" are so vague as to violate Univar's due process rights under the Fourteenth Amendment of the U.S. Constitution and are void for vagueness.

8. Declaring that retroactive application of estimation authority enacted in 2010 and the estimation procedures in 2017 violates Article I, Clause 1 of the U.S. Constitution and/or that these procedures violate the Fifth Amendment to the U.S. Constitution, and that Defendants cannot estimate Plaintiff's liability under 12 Del. C. § 1155 (and subsequently Section 1176 and the Regulations) for the time period from 1991 to 2017;

9. Declaring that the method of selecting Univar for an unclaimed property audit violated Univar's right to equal protection of the laws pursuant to the Fourteenth Amendment of the U.S. Constitution;

10. Declaring that the estimation procedures under 12 Del. C. § 1155 (and subsequently Section 1176 and the Regulations) violate the Takings Clause of the Fifth Amendment to the U.S. Constitution, as applied to the states through the Fourteenth Amendment to the U.S. Constitution;

11. Declaring that the estimation procedures under 12 Del. C. § 1155 (and subsequently Section 1176 and the Regulations) are preempted by federal common law as established in *Texas v. New Jersey* and its progeny;

12.     Declaring that the method of selecting Univar for the Audit violated Univar's right to equal protection of the laws pursuant to the Fourteenth Amendment to the U.S. Constitution;

13.     Allowing Univar to recover its reasonable attorneys' fees against Defendants pursuant to 42 U.S.C. § 1988;

14.     Enjoining the Defendants from conducting the Audit and from threatening to impose upon, or imposing upon, Plaintiff with penalties, interest, or estimation of amounts owed under the DUPL if it does not comply; and

15.     Such other and further relief that is just and proper.


Dated:  December 3, 2018                    **McCARTER ENGLISH LLP**


                                            BY:___*Michael P. Kelly*_____
                                            Michael P. Kelly (DE# 2295)
                                            David A. White (DE# 2644)
                                            Matthew J. Rifino (DE# 4749)
                                            Renaissance Centre
                                            405 N. King Street, Suite 800
                                            Wilmington, Delaware 19801
                                            Telephone: 302.984.6300
                                            Facsimile: 302.984.6399
                                            mkelly@mccarter.com
                                            dwhite@mccarter.com
                                            mrifino@mccarter.com

                                            And

                                            **BAILEY CAVALIERI LLC**

                                            Jameel S. Turner, Esquire
                                            James G. Ryan, Esquire
                                            One Columbus
                                            10 W. Broad Street, Suite 2100
                                            Columbus, Ohio 43215
                                            Telephone: (614) 221-3155
                                            Facsimile: (614) 221-0479
                                            jturner@baileycav.com
                                            jryan@baileycav.com

                                            *Attorneys for Plaintiff*