IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNIVAR, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 18-1909 (MN) |
| | ) |
| RICHARD J. GEISENBERGER, in his capacity as the Secretary of Finance for the State of Delaware; BRENDA R. MAYRACK, in her capacity as the State Escheator of the State of Delaware; and MICHELLE M. SULLIVAN, in her capacity as the Assistant Director for the Department of Finance for the State of Delaware, | ) ) ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |

# **MEMORANDUM OPINION**

Michael P. Kelly, David A. White, Matthew J. Rifino, MCCARTER & ENGLISH LLP, Wilmington, DE; James G. Ryan, Jameel S. Turner, BAILEY CAVALIERI LLC, Columbus, OH – attorneys for Plaintiff

Caroline Lee Cross, Elizabeth R. McFarlan, DELAWARE DEPARTMENT OF JUSTICE, Department of Finance, Wilmington, DE; Melanie K. Sharp, Martin S. Lessner, Mary F. Dugan, Robert M. Vrana, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, DE; Steven S. Rosenthal, Tiffany R. Moseley, John David Taliaferro, LOEB & LOEB LLC, Washington, DC – attorneys for Defendants

September 17, 2019
Wilmington, Delaware

*signature: Maryellen Noreika*

**NOREIKA, U.S. DISTRICT JUDGE:**

Before the Court is a motion to dismiss (D.I. 14) pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, filed by Defendants Richard J. Geisenberger, in his capacity as the Secretary of Finance for the State of Delaware; Brenda R. Mayrack, in her capacity as the State Escheator of the State of Delaware; and Michelle M. Sullivan, in her capacity as the Assistant Director for the Department of Finance for the State of Delaware (collectively "Defendants"), seeking dismissal of the Complaint (D.I. 1) filed by Plaintiff Univar, Inc. ("Univar" or "Plaintiff"). Plaintiff opposes the motion. For the reasons set forth below, Defendants' motion to dismiss the Complaint is granted-in-part and denied-in-part.

**I.      BACKGROUND[1]**

This case requests the Court to review the constitutionality of certain provisions of Delaware's Escheats Law[2] (commonly referred to as the "UPL"), Del. Code Ann. tit. 12, § 1101 *et seq.* An escheat is a procedure by which "a sovereign may acquire title to abandoned property if after a number of years no rightful owner appears." *Texas v. New Jersey*, 379 U.S. 674, 675 (1965). In Delaware, the UPL, as amended in 2017, authorizes the State Escheator to enforce the UPL and "[e]xamine the records of a person or the records in the possession of an agent, representative, subsidiary, or affiliate of the person under examination in order to determine whether the person complied with [the UPL]," Del. Code Ann. tit. 12, § 1171(1). Following the 2017 amendment, the State Escheator may "[i]ssue an administrative subpoena to require that the

---

[1]   This recitation is based, as it must be at this stage, on taking as true all well-pleaded factual allegations in the Complaint.

[2]   This is not the first time aspects of the UPL have been challenged. *See, e.g.*, *Plains All American Pipeline, L.P. v. Thomas Cook*, 201 F. Supp. 3d 547, 2016 WL 4414773 (D. Del. Aug. 16, 2016); *Marathon Petroleum Corp. v. Cook*, 208 F. Supp. 3d 576, 578 (D. Del. 2016); and *Temple-Inland, Inc. v. Cook*, 192 F. Supp. 3d 527, 531 (D. Del. 2016).

1

records specified [by the State Escheator] be made available for examination" and may "[b]ring an action in the Court of Chancery seeking enforcement of an administrative subpoena issued under [the UPL]." Del. Code Ann. tit. 12, § 1171(3), (4).

Univar is a public corporation organized under the laws of the State of Delaware with a principal place of business in Illinois. (D.I. 1 ¶ 7). On December 11, 2015, Defendants informed Univar that it was the subject of an unclaimed property audit ("the Audit") to be conducted by the State of Delaware's agent, Kelmar Associates, LLC ("Kelmar"). (*Id.* ¶¶ 1, 21). Kelmar is employed by the State of Delaware on contingency, based on the amount that the state is able to recover from the targets that Kelmar audits. (*Id.* ¶ 52). A letter from the State Escheator notified Plaintiff that the purpose of the Audit was to "determine [Univar's] compliance with Delaware escheat laws," and that "the scope of the examination will be for the period 1986 through present." (*Id.* ¶ 55). On December 22, 2015, in a subsequent letter, Defendant Whitaker notified Plaintiff that "the notice contained an error in paragraph two. The correct scope of the examination will be for period 1991 through present." (*Id.* ¶ 56). Defendant Whitaker requested Plaintiff to "have available all of Univar prior years' reports of unclaimed property and supporting documentation for all states." (*Id.* ¶ 57). From December 11, 2015 through March 9, 2018, Kelmar solicited nineteen (19) additional states to join the Audit. (*Id.* ¶ 58). Following the first letter from Defendant Whitaker, Plaintiff, through counsel, sent a response to the state and Kelmar outlining concerns about the Audit and the confidentiality of Univar's records and proprietary information. (*Id.* ¶ 59). For the next several months, Univar communicated with Kelmar about a potential Confidentiality and Non-Disclosure Agreement, but the parties were unable to come to a compromise. (*Id.* ¶¶ 60-65). An employee at Kelmar wrote to Plaintiff's attorney on May 2, 2016 to "remind [them] that several of the other states have made it clear that Univar should proceed

with their examinations regardless of whether the parties' agree on a private confidentiality agreement" and threatened that "[a]bsent progress, we will update the states again concerning the lack of cooperation." (*Id.* ¶ 63; *see also id.*, Ex. A at 62). On September 23, 2016, Kelmar sent seventeen (17) emails to Plaintiff indicating that a Kelmar team would conduct seventeen (17) separate audits, with information tailored to each of the participating states. (*Id.* ¶ 66). Plaintiff objected to Kelmar's plan. (*Id.* ¶ 67). Kelmar again threatened to "report Univar's continued delay to the authorizing states." (*Id.* ¶ 68). On May 9, 2018, Kelmar informed Plaintiff that three (3) additional states had been added to the Audit. (*Id.* ¶ 70). Then, on July 31, 2018, Defendant Whitaker wrote to Univar on behalf of the State of Delaware to demand that Plaintiff comply with the Audit. (*Id.* ¶ 72). Finally, on October 30, 2018, Delaware issued a subpoena ("the Subpoena") to Univar, pursuant to the amended UPL, requesting all information appearing in Kelmar's initial document request, including: tax returns; consolidating income statements; consolidating balance sheets; consolidating cost of goods sold; detailed state apportionment schedules; cash managers, shared services entities, and common paymaster entities; G/L numbers and account numbers; and prior audits or voluntary disclosure agreements. (*Id.* ¶¶ 74-75). The Subpoena required that documents be produced on December 3, 2018. (*Id.* ¶ 75).

Rather than complying with the Subpoena, Plaintiff filed the Complaint in this case on December 3, 2018. (*Id.* at 1). Plaintiff alleges ten counts against Defendants for: unreasonable search and seizure (Count 1); violation of substantive due process (Count II); violation of procedural due process (Count III); violation of the ex post facto clause (Count IV); an unconstitutional taking (Count V); a violation of equal protection of the laws (Count VI); "injunction" (Count VII); "void for vagueness" (Count VIII); violation of federal common law (Count IX); and "attorneys fees" (Count X). (*Id.* ¶¶ 77-154). The Complaint

seeks a declaration that the State of Delaware, through its agent and auditor, [Kelmar] has subjected and continues to subject, Univar to an unclaimed property audit ("Audit") under 12 Del. C. § 1171 *et seq.* [sic] that (1) infringes on Univar' [sic] right under the Fourth Amendment to the United States Constitution to be free from unreasonable searches and seizures; (2) deprives Univar of its substantive due process rights under the Fourteenth Amendment to the United States Constitution; (3) deprives Univar of its procedural due process rights under the Fourteenth Amendment to the United States Constitution; (4) has subjected Univar to an unconstitutional taking of private property for public use without just compensation; and (5) has violated Univar's Fourteenth Amendment right to equal protection of the laws.

(*Id.* ¶ 1). The Complaint, moreover "seeks a declaration that Delaware's retroactive application of 12 Del. C. § 1176, as amended in July of 2010 and again on February 2, 2017, to allow the State Escheator to estimate a holder's liability when the holder has failed to maintain adequate records when Delaware law did not require the holder to maintain records during the period covered by the audit, is a violation of the Constitution's Ex Post Facto and Due Process Clauses." (*Id.* ¶ 2). Lastly, the Complaint asks the Court to declare that the state's estimation methodology violates the due process clause, that the use of Kelmar to conduct a multi-state audit violates the due process clause by exposing confidential and proprietary records to public inspection, and that Delaware's contingent-fee compensation arrangement with Kelmar violates Univar's due process rights "because Kelmar is the real party in interest that selects the audit subjects and performs all legally significant audit tasks and assessments, which results in Univar submitting a dispute to a self-interested party." (*Id.* ¶¶ 3-5).

On December 7, 2018, Delaware filed a Verified Complaint against Univar in the Delaware Court of Chancery seeking an Order requiring Univar to comply with the Subpoena. (D.I. 16 at 1). On April 11, 2019, Vice Chancellor Slights granted Univar's motion to stay the Chancery Court action "for the sake of efficiency and the orderly adjudication of the threshold constitutional issues" by this Court. (D.I. 22, Ex. B at 45:15-46:4). The Vice Chancellor's order has been affirmed by the Delaware appellate courts.

The motion to dismiss presently before the Court (D.I. 14) "requests that this Court decline jurisdiction over a declaratory judgment action to allow the state court system an opportunity to resolve . . . questions of state law" and, alternatively, dismiss "each claim in the Complaint for failure to state a claim upon which relief can be granted." On May 31, 2019, the Court ordered the parties to submit letters "outlining which, if any, of Plaintiff's claims may be susceptible to a challenge of ripeness and the legal basis upon which any such assertions are based." (D.I. 28).

In response, Defendants contend that "[u]nderlying each of Defendants' arguments seeking dismissal is the fundamental premise that Univar's claims are not ripe for review." (D.I. 30 at 1). Conversely, Plaintiff "asserts that all of its claims are ripe under the legal standards set forth by the Third Circuit Court of Appeals in [*Marathon* and *Plains*]" stating that "[o]nce the State sought to enforce its audit-related requests for information on October 30, 2018 each of Univar's claims became live, actionable and ripe for adjudication, because the threat of future harm became sufficiently immediate to constitute a cognizable injury." (D.I. 33 at 1 (citing *Marathon Petroleum Corp. v. Sec'y of Fin. for Delaware*, 876 F.3d 481, 497 (3d Cir. 2017) and *Plains All American Pipeline, L.P. v. Cook*, 866 F.3d 534 (3rd Cir. 2017))). After review of the facts at issue and relevant Third Circuit precedent, the Court finds that all but two of Plaintiff's claims are not ripe. The two ripe claims state a claim upon which relief may be granted and therefore will not be dismissed.

## II.  LEGAL STANDARD

### A.  Lack of Subject Matter Jurisdiction and Ripeness under Rule 12(b)(1)

"If the court determines . . . it lacks subject matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Motions brought under Rule 12(b)(1) for lack of subject matter jurisdiction may present either a facial or factual challenge to the court's jurisdiction. *Lincoln Ben.*

*Life Col. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015). A challenge is facial when a motion to dismiss is filed prior to an answer and asserts that the complaint is jurisdictionally deficient on its face. *Cardio-Medical Assoc., Ltd. v. Crozer-Chester Medical Center*, 721 F.2d 68, 75 (3d Cir. 1983). In reviewing a facial challenge under Rule 12(b)(1), the standards relevant to Rule 12(b)(6) apply. *Lincoln*, 800 F.3d at 105 ("In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff"). A plaintiff bears the burden of establishing subject matter jurisdiction. *Id.* Ripeness challenges are properly brought pursuant to Rule 12(b)(1). *See, e.g.*, *NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 341 (3d Cir. 2001).

### B. Failure to State a Claim Under Rule 12(b)(6)

When presented with a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), district courts conduct a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the Court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Id.* at 210-11. Second, the Court determines "whether the facts alleged in the complaint are sufficient to show . . . a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Dismissal under Rule 12(b)(6) is appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also*

6

*Fowler*, 578 F.3d at 210. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court is not obligated to accept as true "bald assertions" or "unsupported conclusions and unwarranted inferences." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997). Instead, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

### III. DISCUSSION

#### A. Ripeness of Claims for Declaratory Relief Against Defendants

For a federal court to exercise jurisdiction over a case, the case must be ripe for review. *See Thompson v. Borough of Munhall*, 44 Fed. App'x. 582, 583 (3d Cir. Aug. 13, 2002). "Ripeness is a separate doctrine from standing, but both doctrines originate from the same Article III requirement of a case or controversy." *Free Speech Coalition, Inc. v. Attorney Gen. U.S.*, 825 F.3d 149, 167 n.15 (3d Cir. 2016). "The ripeness doctrine serves 'to determine whether a party has brought an action prematurely and counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine.'" *Khodara Envtl., Inc. v. Blakey*, 376 F.3d 187, 196 (3d Cir. 2004) (quoting *Peachlum v. City of York, Pennsylvania*, 333 F.3d 429, 433 (3d Cir. 2003)). The purpose of the doctrine "is to prevent the courts . . . from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v.*

7

*Gardner*, 387 U.S. 136, 148–49 (1967). Under Third Circuit law, courts analyze three factors to determine whether a declaratory judgment action is ripe: "first, the adversity of the parties' interests; second, the probable conclusiveness of a judgment; third, the practical utility to the parties of rendering a judgment." *NE Hub Partners*, 239 F.3d at 342. "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. U.S.*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985)).

The facts of this case are largely the same as those in *Plains* where the unreasonable search and seizure, substantive due process, ex post facto, takings, void for vagueness, and preemption claims were deemed unripe. *Plains*, 201 F. Supp. 3d at 559, *aff'd*, 866 F.3d at 538, 540. Plaintiff, however, argues that "[t]he facts underlying Univar's claims in this action are materially different from the fact patterns before the Third Circuit in *Plains* and *Marathon*" because here: (1) "the Defendants have taken affirmative steps to enforce their unconstitutional audit demands by serving a subpoena and filing a formal enforcement action against Univar;" (2) "[t]he State's unconstitutional estimation methodology is now formally recognized . . . and the Defendants will be required to employ this methodology against Univar, because they seek to audit Univar's books and records for unclaimed property back to at least 2000, which exceeds Univar's standard record retention policies;" and (3) "the Defendants' application of the February 2017 amendments to an audit commenced in 2015 effectively amounts to changing the rules of the game at halftime, which the U.S. Constitution prohibits." (D.I. 33 at 2). The Court disagrees. Currently, there is no certainty that Plaintiff will be subjected to the challenged provisions of the audit. While the state has subpoenaed documents from Plaintiff under the 2017 amendment to the UPL and has filed suit in state court to compel compliance, Univar cannot meet the adversity prong of the ripeness test

until it is actually compelled to participate in the audit. *See Plains*, 201 F. Supp. 3d at 556 ("If Plaintiff wishes to "challenge the enforceability of [a future] . . . subpoena, it should refuse[ ] to comply with the subpoena and await[ ] any enforcement action. Until then, there is no adversity." (internal citations and quotations omitted)). Absent a ruling from the Chancery Court enforcing the Subpoena, Plaintiff is not yet compelled to comply with the document demands and unclaimed property audit and can thus not yet be subjected to the Audit. Because of this, the Court finds that these issues raised by the Plaintiff, remain contingent upon "future events that may not occur as anticipated, or indeed may not occur at all." *See Texas*, 523 U.S. at 300. Moreover, though the estimation methodology may now be set out in statute, the reality remains that any constitutional injury arising therefrom is contingent upon it actually being used against Plaintiff to form the basis of an escheatment demand from the Defendants. Such a situation remains contingent upon future events, and thus Plaintiff's case is not distinguishable from *Plains*. Lastly, while it may later be found that a retroactive application of the UPL's newly-created subpoena power against a company for which an audit inquiry was opened prior to the statute's amendment is unconstitutional, the reality remains that the Subpoena at issue here has not yet been enforced against Plaintiff. It is within the power of the Chancery Court to determine the enforceability. Should the Chancery Court rule in favor of Univar that the Subpoena cannot be enforced, Plaintiff remains in the same stature as *Plains* and *Marathon*, where it is free to "simply refuse to cooperate." *Marathon*, 876 F.3d at 497.

In contrast to the claims found to be unripe, the equal protection and procedural due process claims asserted in *Plains* were deemed to be ripe. As to the equal protection, the district court found – and the Third Circuit affirmed – that the three ripeness factors had been met. *Plains*, 201 F. Supp. 3d at 556-559, *aff'd*, 866 F.3d at 540. Distinguishing from the other (unripe) claims,

9

the district court found that once the company had been targeted by Delaware for an unclaimed property audit, "the supposed unlawful conduct" surrounding equal protection "is complete" and "[b]y simply initiating the process, the parties became adverse." For similar reasons, the district court explained that the initiation of the process provides conclusiveness and practical utility because "[f]uture actions undertaken by the Delaware Defendants will have no impact on Plaintiff's equal protection claim" and "there is some practical utility in assessing whether [the] targeting deprived Plaintiff of its constitutional rights." *Id.* at 558-59. The situation is no different here. By notifying Plaintiff on December 11, 2015 that "the State of Delaware intends to examine the books and records of Univar, Inc. . . . to determine compliance with the Delaware Escheats Law," (D.I. 1, Ex. A), the Defendants targeted Plaintiff and established the necessary elements for ripeness of the equal protection claim.

Additionally, the Third Circuit in *Plains* found that the asserted procedural due process claim was ripe, noting that conclusiveness and utility were met where "[n]o further factual development is needed to address the merits of this claim, and a ruling on the merits would be 'useful to the parties and others who could be affected' given Delaware's widespread use of private auditors." *Plains*, 866 F.3d at 545 (citing *Presbytery of N.J. of Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1470 (3d Cir. 1994)). Moreover, regarding adversity, the Third Circuit found that "[b]ecause the conduct being challenged by Plains is the appointment of Kelmar to conduct this audit, the harm alleged for this claim is not based on a contingency; it is based on conduct that has already occurred" and thus "adversity exits." *Id.* The court concluded by stating "[s]ince all three *Step-Saver*[3] elements are present, Plains's procedural due process claim is ripe and the District Court erred in dismissing it." *Id* (citing *Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1154

---

[3] Referring to *Step-Saver Data Sys., Inc. v. Wyse Tech.,* 912 F.2d 643, 646 (3d Cir. 1990).

10

(3d Cir. 1995)). So too here, the state of Delaware has engaged Kelmar as a third-party auditor for its unclaimed property law and Kelmar has already taken part in lengthy discussions with the Plaintiff to begin its audit. (D.I. 1, Ex. A). For these reasons, the Court finds that Plaintiff's claims arising under equal protection and procedural due process are ripe.

### B. <u>Failure to State a Claim</u>

Having found that the procedural due process and equal protection claims are ripe for review, the Court now turns to whether Plaintiff has sufficiently pleaded claims upon which relief may be granted. The Court will examine these claims in turn.

#### 1. **Procedural Due Process**

To state a claim for violation of procedural due process, Plaintiff "must show that it was required to submit a dispute to a self-interested party." *Plains*, 866 F.3d at 545 (citing *Carey v. Piphus*, 435 U.S. 247, 266 (1978); *United Church of Med. Ctr. v. Med. Ctr. Comm'n*, 689 F.2d 693, 701 (7th Cir. 1982)). Here, Plaintiff alleges that Kelmar is a self-interested party adjudicating its unclaimed property audit. (D.I. 1 ¶ 107 ("Delaware Defendants have unlawfully delegated their administrative audit authority to Kelmar and have allowed Kelmar to act in a quasi-judicial capacity.")). The Complaint contends that "Kelmar has a large financial state in the outcome of the Audit and is not a neutral party [given that] Kelmar's compensation will be contingent on the amount of unclaimed property liability that Delaware ultimately assesses against Univar" based on the total determined by Kelmar. (*Id.* ¶ 110). According to the Complaint, this contingent compensation structure has netted Kelmar more than $104 million since 2013. (*Id.* ¶ 52).

Defendants argue that Delaware's use of Kelmar does not violate Plaintiff's due process right to a neutral decisionmaker because "the actions [of Kelmar] are not judicial or quasi-judicial decisions." (D.I. 19 at 13-14). Instead, Defendants argue that Kelmar is acting in a "prosecutorial

11

or plaintiff-like capacity," such that it merely collects evidence in an "enforcement capacity to determine an initial liability," later reviewed by the State Escheator who mails a request to the targeted company. (*Id.* at 14). Defendants' comparison is unavailing. The Complaint contends that Kelmar has a hand in the audit process from the selection of targets through the determination of the final unreported unclaimed property total and then receives its compensation based on money calculated and escheated. The Court is satisfied that this contention and the supporting claims are sufficient to state a claim that Plaintiff must submit to a non-neutral adjudicator.

Defendants further argue that Plaintiff is not subject to a non-neutral decisionmaker because "nothing in the UPL limits the State Escheator's determination to those contained in the [Report of Examination ("ROE") by Kelmar], and the State Escheator is free to reach his or her own conclusions." (D.I. 16 at 12). "The requirement of neutrality has been jealously guarded by [the Supreme Court]." *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242-43 (1980). The Supreme Court has consistently stated that "justice must satisfy the appearance of justice," and due process forbids the "possible temptation to the average man as a judge. . . which might lead him not to hold the balance nice, clear and true between the state and the accused." *Id.* (citing *Offutt v. United States*, 348 U.S. 11, 14 (1954)). Here, the Complaint alleges that Kelmar has a vested interest in drawing out an audit, including other states as "clients," and increasing the total of unclaimed property given its contingency-based pay. Though Defendants argue the Escheator is "free" to make its own determinations, the obvious flip-side to this option is that he or she is also free to rely solely on the ROE of the auditor. Discovery from the Defendants, of course, would clarify whether Kelmar is purely providing a suggestion to the State Escheator that is then rigorously reviewed or is instead rubber stamped, as alleged. (D.I. 1 ¶ 29). That the later could be true, and that a targeted company has no opportunity to contest the finding of Kelmar's determination prior to the State

Escheator's demand further bolsters the Court's finding that Plaintiff has stated a claim upon which relief may be granted.

Defendants also seek safe harbor in the UPL statute, which prescribes that the State Escheator will review a ROE before seeking payment from a presumed holder of unclaimed property, Del. Code Ann. tit. 12 § 1179(a), and a targeted holder may challenge the determination of liability in the Court of Chancery, Del. Code Ann. tit. 12 § 1179(b)(1). The Supreme Court has found that "[w]here an initial determination is made by a party acting in an enforcement capacity, due process may be satisfied by providing for a neutral adjudicator to 'conduct a *de novo* review of all factual and legal issues.'" *Concrete Pipe & Prod. of California, Inc. v. Constr. Laborers Pension Tr. for S. California*, 508 U.S. 602, 618 (1993) (citing *Marshall*, 446 U.S., at 245). At this stage, without engaging in a full examination of Delaware's UPL statutory language, it suffices to say that it is not clear to the Court that an uncontestable report to the State Escheator and future, limited judicial appeal[4] meet the Supreme Court's requirement of a *de novo* review of *all factual and legal issues* that would relieve the Defendants of the appearance that a self-interested party has significant control over the audit process and unclaimed property determination. For the above reasons, the Court finds that Plaintiff has stated a procedural due process claim against Defendants stemming from the use of Kelmar in the unclaimed audit process.

---

[4] "In the appeal to the Court of Chancery, the Court, when factual determinations are at issue, shall take due account of the experience and specialized competence of the State Escheator and of the purposes of the basic law under which the State Escheator has acted. *The Court's review shall be limited to a determination of whether the statement of findings and request for payment was the product of an orderly and logical deductive process rationally supported by substantial, competent evidence on the hearing record.*" 12 Del C 1179(d) (emphasis added). The Defendants argue that "[t]his is the same standard of review that Delaware courts use to review decisions by Delaware trial courts." (D.I. 16 at 13 n.3). Seemingly lost on Defendants is the reality that before a challenge to the Court of Chancery, the Escheats Law provides no adversarial review.

13

## 2. Equal Protection

The equal protection clause of the Fourteenth Amendment holds that no state may "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. The equal protection clause is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "As a general matter, economic and social legislation is subject to rational basis review, under which a law need only be 'rationally related to a legitimate state interest.'" *Schumacher v. Nix*, 965 F.2d 1262, 1266 (3d Cir. 1992) (footnote omitted) (quoting *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976) (per curiam)). Plaintiff alleges that "Kelmar and Delaware look to 'large and famous' companies that they believe will produce a large amount of money for the State's General Fund." (D.I. 1 ¶ 127). Univar, moreover, contends that "Kelmar selects audit subjects, develops and issues information requests, conducts records reviews, performs estimation calculations and makes audit findings and determinations that are then approved by Delaware." (*Id.* ¶ 51). Plaintiff asserts "[t]he size, wealth, and fame of the holder of the unclaimed property bears no rational relationship to the purpose of the statute." (*Id.*).

Defendants argue that Plaintiff has failed to plead a plausible equal protection claim because the district court in *Plains* stated that "it is entirely legitimate for an agency with limited resources to target entities which are more likely than others to hold large amounts of unclaimed property" and because the actions of the state were rationally related to that interest, they satisfied rational basis review. 201 F. Supp. 3d at 560. Additionally, Defendants argue that "even if revenue-raising was the primary purpose behind an unclaimed property statute, 'as long as it was not the only legitimate purpose underlying the legislation, [the statute] will pass rational basis examination.'" (D.I. 16 at 18 (citing *N.J. Retail Merchs. Ass'n v. Sidamon-Eristoff*, 669 F.3d 374,

398 (3d Cir. 2012)). Aside from the district court's supposition in *Plains*, Defendants offer no additional reasons why large, wealthy companies are targeted other than for revenue-raising. The Complaint alleges that State Escheator's unclaimed property audits account for the third largest source of income in the state of Delaware and surpassed $475 million in the last fiscal year. (D.I. 1 ¶ 54). Additionally, as mentioned above, the Complaint indicates that the State has paid in excess of $100 million to Kelmar over the last six years, a company that allegedly "selects audit subjects, develops and issues information requests, conducts record reviews, performs estimation calculations and makes audit findings and determinations that are then approved by Delaware." (*Id.* ¶¶ 51-52). Thus, the Complaint suggests that not only is the State Escheator flush with funding, but that it also outsources the financial burden of its work to an outside entity that is then paid on commission. At this stage, where Defendants have offered no legitimate purpose for the selection of wealthy companies aside from raising revenue, the Court finds that Plaintiff has stated a claim for an equal protection violation upon which relief may be granted.

### C. <u>Staying the Proceedings</u>

Inherent in the Court's power to control the disposition of civil matters on its docket is the power to stay proceedings when judicial economy or other interests do so require. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "A stay is an extraordinary measure, and the decision to impose a stay rests within the sound discretion of the district court." *Barker v. Kane*, 149 F. Supp. 3d 521, 525 (Mar. 3, 2016) (citing *Walsh Secs., Inc. v. Cristo Prop. Mgmt., Ltd.*, 7 F. Supp. 2d 523, 526 (D.N.J. 1998); *In re Adelphia Commc'ns Secs. Litig.*, 2003 U.S. Dist. LEXIS 9736, 2003 WL 22358819 (E.D. Pa. 2003)). It is no secret that the questions before the Court are contentious. The Plaintiff has taken the steps possible to prevent an unclaimed property audit against it from occurring while the state of Delaware has both amended the law to gain a right to subpoena targets

15

for compliance and sought enforcement of its subpoena against Plaintiff so that Kelmar may audit the company. This opinion has recognized that many claims in the Complaint are not yet ripe. Though the Court finds that the procedural due process and equal protection claims are ripe and state a claim, it also finds that, in the interest of justice and a more fulsome determination of the issues raised, the best course of action is to stay this case until such a time that the Court of Chancery determines whether to enforce the Subpoena against Plaintiff. If the Chancery Court does not enforce the Subpoena, this action may no longer be necessary. On the other hand, if the Subpoena is enforced, certain issues may become ripe and an amended complaint may be appropriate. The Court recognizes that certain abstention doctrines may come into play[5], but believes that "[a]s a matter of comity, it would be well if Delaware had the opportunity to address [some of these] issues in the first instance." *Marathon*, 876 F.3d at 497-98. Thus, the present litigation before this Court is stayed until the enforceability of the subpoena against Univar has been addressed.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (D.I. 14) is granted-in-part and denied-in-part. An appropriate order will follow.

---

[5] The Court notes that according to Supreme Court precedent certain issues may be preserved for adjudication in federal courts if those issues are explicitly noted and deliberately avoided during state court litigation. *See England v. Louisiana State Bd. of Med. Examiners*, 375 U.S. 411, 420 (1964).