IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNIVAR SOLUTIONS INC., f/k/a UNIVAR INC._____Plaintiff,_____v._____RICHARD J. GEISENBERGER, in his capacity as the Secretary of Finance for the State of Delaware, BRENDA R. MAYRACK, in her capacity as the State Escheator of the State of Delaware, and BRIAN R. WISHNOW in his capacity as the Assistant Director – Enforcement of the Department of Finance for the State of Delaware,_____Defendants. | C.A. No. 18-1909 (MN) |

## MEMORANDUM OPINION

Matthew J. Rifino, Travis Ferguson, MCCARTER & ENGLISH LLP, Wilmington, DE; Jameel S. Turner, James G. Ryan, BAILEY CAVALIERI LLC, Columbus OH – Attorneys for Plaintiff

Melanie K. Sharp, Martin S. Lessner, Mary F. Dugan, Robert M. Vrana, YOUNG CONAWAY STARGETT & TAYLOR, LLP, Wilmington, DE – Attorneys for Defendants.

June 8, 2022
Wilmington, Delaware


**NOREIKA, U.S. DISTRICT JUDGE**

Plaintiff Univar Solutions Inc. ("Plaintiff" or "Univar") moved for a temporary restraining order and preliminary injunction[1] enjoining Defendants Richard J. Geisenberger, in his capacity as the Secretary of Finance for the State of Delaware, Brenda R. Mayrack, in her capacity as the State Escheator of the State of Delaware, and Brian R. Wishnow in his capacity as the Assistant Director – Enforcement of the Department of Finance for the State of Delaware (collectively "Defendants" or "the State") from enforcing the subpoena ("the Subpoena") that was the subject of the Delaware Court of Chancery's April 7, 2022 Final Order Granting Plaintiff's Motion for Judgment on the Pleadings ("the Final State Court Order"). The motion has been fully briefed (D.I. 83, 84, 85, 87, 89, 90, 91, 92, 93) and the Court heard telephonic argument (D.I. 99 (Tr.)). For the following reasons, the Court DENIES Plaintiff's motion.[2] This opinion constitutes the Court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

I. **BACKGROUND**

  A. **Delaware Unclaimed Property Law**

This case is yet another in a line concerning Delaware's Escheat Law, commonly referred to as the Delaware Unclaimed Property Law or "UPL." 12 Del. C. § 1101 *et seq*. This Court has discussed Delaware's escheat scheme at length in prior opinions, *see Univar v. Geisenberger*, 409

---

[1] Plaintiff originally moved for a temporary restraining order (D.I. 82), but later clarified that it was seeking both a temporary restraining order and preliminary injunction. (D.I. 88).

[2] On June 6, 2022, the Court preliminarily granted the portion of Plaintiff's request seeking a temporary restraining order for the reasons stated in the Court's Order. (D.I. 98). That Order remains in effect until its stated expiration (Friday, June 10, 2022 at 12:00 a.m.). After that time, the State may enforce the Subpoena (because the Court is hereby denying Plaintiff's motion for a preliminary injunction).

F. Supp. 3d 273 (D. Del. 2019) and *Eaton Corp. v. Geisenberger*, 486 F.Supp.3d 770 (D. Del. 2020). In light of the expedited nature of the proceedings here, the Court addresses only the limited aspects of the UPL that bear most on the pending motion.

"An escheat is a procedure by which 'a sovereign may acquire title to abandoned property if after a number of years no rightful owner appears.'" *Univar, Inc. v. Geisenberger*, 409 F. Supp. 3d 273, 276 (D. Del. 2019) (quoting *Texas v. New Jersey*, 379 U.S. 674, 675 (1965)). The States, as sovereigns, have the right to escheat property and, in a line of cases referred to as the *Texas* trilogy, the Supreme Court delineated priority rules that States must adhere to in escheating property:

> First, we must determine the precise debtor-creditor relationship as defined by the law that creates the property at issue. Second, because the property interest in any debt belongs to the creditor rather than the debtor, the primary rule gives the first opportunity to escheat to the State of "the creditor's last known address as shown by the debtor's books and records." Finally, if the primary rule fails because the debtor's records disclose no address for a creditor or because the creditor's last known address is in a State whose laws do not provide for escheat, the secondary rule awards the right to escheat to the State in which the debtor is incorporated. These rules arise from our "authority and duty to determine for [ourselves] all questions that pertain" to a controversy between States, and no State may supersede them by purporting to prescribe a different priority under state law.

*Delaware v. New York*, 507 U.S. 490, 499–500 (1993) (citations omitted).

Pursuant to the UPL, on an annual basis, entities domiciled in Delaware are required to report to the State Escheator property in their possession that is presumed abandoned and subject to the custody of the State.³ 12 Del. C. § 1142. To ensure compliance with the law, the State is permitted to "[e]xamine the records of a person or the records in the possession of an agent,

---

³ Unless otherwise indicated, the Court's reference to the UPL is to the version in effect at the time of this opinion's issuance.

2

representative, subsidiary, or affiliate of the person under examination in order to determine whether the person complied with [the law]." 12 Del. C. § 1171(1). The UPL specifies that the State Escheator may take custody of property if the holder of the property is domiciled in Delaware and "any of the following circumstances are met: (1) Another state is not entitled to the property because there is no last-known address in the records of the holder of the owner or other person entitled to the property. (2) The state of the last-known address of the owner or other person entitled to the property does not provide for custodial taking of the property. (3) The last-known address of the owner is in a foreign country." 12 Del. C. § 1141(a).

In the wake of some criticism and judicial rulings, Delaware revised its escheat laws in 2017. One change imposed, for the first time, a requirement that certain records be retained "for 10 years after the date the report was filed." 12 Del. C. § 1145. Absent complete records "the State Escheator may determine the amount of property due using a reasonable method of estimation based on all information available to the State Escheator, including to extrapolation and the use of statistical sampling when appropriate." 12 Del. C. § 1176(a). If the State chooses to estimate the amount of property due, 12 Del. Admin. C. §§ 104-2.18 *et seq.* provides a framework for how such estimation is to be conducted.

Delaware regulations provide that the most recent amendments to the UPL, described above, shall be applied to ongoing examinations "[t]o the extent practical." 12 Del. Admin. C. § 104-2.3. The State has taken the position in this case that "[t]he 2017 [UPL] applies to ongoing examinations . . .", and has noted that prior to the imposition of the 2017 records retention requirement, "Univar was subject to other common records-retention requirements." (D.I. 89 at 10). The State, however, did not expressly claim that or explain how its records retention policy

3

adopted in 2017 could be (or would be) applied to Univar for records not retained prior to 2017 that had not been subject to a retention requirement.

### B. Procedural History

Univar is a public corporation organized under the laws of the State of Delaware with a principal place of business in Illinois. (D.I. 97 ¶ 9). On December 11, 2015, Defendants informed Univar that it was the subject of an unclaimed property audit ("the Audit") to be conducted by the State of Delaware's agent, Kelmar Associates, LLC ("Kelmar"). (*Id.* ¶¶ 22, 56-57). The purpose of the Audit was to "determine [Univar's] compliance with Delaware escheat laws," and "the scope of the examination [was originally stated to] be for the period 1986 through present." (*Id.* ¶ 56). On December 22, 2015, in a subsequent letter, the scope of the examination was corrected to be the period 1991 through present. (*Id.* ¶ 57).

Kelmar sent Univar requests for production of documents to which Univar objected. (*Id.* ¶ 22). As set out more fully in the Court's September 17, 2019 opinion (D.I. 59), what followed was a protracted back-and-forth where Univar resisted furnishing the State with any documents. Finally, on October 30, 2018, Delaware issued the Subpoena to Univar, pursuant to the amended UPL, requesting all information appearing in Kelmar's initial document requests, including: tax returns; consolidating income statements; consolidating balance sheets; consolidating cost of goods sold; detailed state apportionment schedules; cash managers, shared services entities, and common paymaster entities; G/L numbers and account numbers; and prior audits or voluntary disclosure agreements. (*Id.* ¶¶ 75-76).

Rather than complying with the Subpoena, on December 3, 2018, Plaintiff filed the original verified Complaint in this case. (D.I. 1). In it, Plaintiff alleged ten counts against Defendants for: unreasonable search and seizure (Count I); violation of substantive due process (Count II);

violation of procedural due process (Count III); violation of the ex post facto clause (Count IV); an unconstitutional taking (Count V); a violation of equal protection of the laws (Count VI); "injunction" (Count VII); "void for vagueness" (Count VIII); violation of federal common law (Count IX); and attorneys' fees (Count X). (*Id.* ¶¶ 77-154). The Complaint sought:

> a declaration that the State of Delaware, through its agent and auditor, [Kelmar] has subjected and continues to subject, Univar to an unclaimed property audit ("Audit") under 12 Del. C. § 1171 *et seq.* [sic] that (1) infringes on Univar' [sic] right under the Fourth Amendment to the United States Constitution to be free from unreasonable searches and seizures; (2) deprives Univar of its substantive due process rights under the Fourteenth Amendment to the United States Constitution; (3) deprives Univar of its procedural due process rights under the Fourteenth Amendment to the United States Constitution; (4) has subjected Univar to an unconstitutional taking of private property for public use without just compensation; and (5) has violated Univar's Fourteenth Amendment right to equal protection of the laws.

Four days after Plaintiff filed its Complaint, the State filed a verified Complaint against Univar in the Delaware Court of Chancery seeking to compel Univar to comply with the Subpoena. (D.I. 16 at 1). On April 11, 2019, Vice Chancellor Slights stayed the Chancery Court action "for the sake of efficiency and the orderly adjudication of the threshold constitutional issues" by this Court. (D.I. 22, Ex. B at 45:15-46:4). Defendant then moved to dismiss Plaintiff's federal action. (D.I. 14). This Court dismissed all but Plaintiff's equal protection and procedural due process claims as unripe, reasoning that Plaintiff's challenge to the UPL were premature because it had not been compelled to comply with the Subpoena. (D.I. 59). The Court then stayed the case so that the Chancery Court could determine whether the Subpoena Delaware sought to enforce was, in fact, enforceable. On April 7, 2022, Vice Chancellor Slights answered that question in the affirmative and entered the Final State Court Order, setting the date for Plaintiff to comply with the Subpoena as June 6, 2022. (D.I. 84, Ex. A at 2).

5

Plaintiff chose not to appeal the Final State Court Order to preserve its ability to bring its federal claims in this Court,[4] and moved to lift the stay in this case. (D.I. 72). The Court granted Plaintiff's motion. (D.I. 80). Thereafter, Plaintiff filed the instant motion (D.I. 88) and the Court granted Plaintiff leave to file an Amended Complaint.[5] The verified Amended Complaint (D.I. 97) updates certain factual allegations and alleges: unreasonable search and seizure (Count I); violation of substantive due process (Count II); violation of procedural due process (Count III); violation of the ex post facto clause (Count IV); violation of substantive due process (Count V); violation of equal protection (Count VI); unconstitutional taking (Count VII); violation of foreign commerce clause (Count VIII); violation of federal common law (preemption) (Count IX); void for vagueness (Count X); injunction (Counts XI, XII) and attorneys' fees (Count XIII). (D.I. 87). The Amended Complaint seeks thirteen declarations that the Audit is improper for various reasons as well as an injunction enjoining the Audit and an award of fees.

## II. LEGAL STANDARD

"Preliminary injunctive relief is 'an extraordinary' remedy" appropriate "'only in limited circumstances.'" *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (quoting *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994)). "It may be granted only when the moving party shows '(1) a likelihood of success on the merits;

---

[4] The State argues that this Court lacks jurisdiction because of the *Rooker-Feldman* doctrine. (D.I. 89 at 5-8). Plaintiff, however, challenged the enforceability of the Subpoena in the Court of Chancery without raising the claims brought here, i.e., challenges to the lawfulness of various provisions of the UPL. Plaintiff is not inviting this court to review and reject the judgment of the Chancery Court, and the *Rooker-Feldman* doctrine does not apply.

[5] The Court granted Plaintiff's motion to amend in order to update and clarify the state of the current record for this Court as well as any appellate review. As the Court noted during the June 3, 3022 teleconference, the Court did not address futility in allowing the amendment. (D.I. 99 (Tr.) at 3:2-3:10).

(2) that the movant will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief.'" *Doe by and through Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 526 (3d Cir. 2018) (quoting *Kos*, 369 F.3d at 708); *accord Winter*, 555 U.S. 7, 20 (2008). Movants face a "heavy burden," *Lane v. New Jersey*, 753 F. App'x. 129, 131 (3d Cir. 2018) (citations omitted), and must establish entitlement to relief by "clear evidence," *Boyertown Area Sch. Dist.*, 897 F.3d at 526. Failure to establish any of the elements, but particularly either of the first two, renders preliminary injunctive relief "inappropriate." *Arrowpoint Capital Corp. v. Arrowpoint Asset Mgmt., LLC*, 793 F.3d 313, 319 (quoting *NutraSweet Co. v. Vit-Mar Enters., Inc.,* 176 F.3d 151, 153 (3d Cir. 1999)).

**III.     DISCUSSION**

    **A.     Likelihood of Success on the Merits**

Plaintiff's motion asserts four grounds on which preliminary relief should be granted: 1) the State's retroactive application of the UPL violates the United States Constitution's due process, ex post facto, and takings clauses (D.I. 83 at 7-10); 2) the State's use of estimation and its estimation methodology are preempted by federal common law and violate Univar's constitutional rights (*id.* at 10-14); 3) UPL § 1141(a)(3) and § 2.2.2.3 of the regulations violate the foreign commerce clause, are preempted, violate the takings clause, and Univar's due process rights (*id.* at 14-15): and 4) the State's unlawful delegation of authority to a self-interested third party violates Univar's due process and equal protection rights (*id.* at 15-17). The Court addresses these issues below.

### 1. Claims Based on Use of "Estimation"

The clear focus of the Plaintiff's briefing in asking the Court to enjoin enforcement of the Subpoena is that the Audit will necessarily entail use of estimation to calculate payments due. Estimation is addressed throughout the merits arguments and underlies the first two of Plaintiff's four bases for relief. First, Plaintiff claims that the 2017 UPL amendments' retroactivity violates its due process rights and amounts to an ex post facto violation and illegal taking (asserted ground 1) because § 1145 of the 2017 UPL requires certain records to be retained for ten years after the holder files its annual escheat report and § 1176(a) provides that if the holder fails to keep records, "the State Escheator may determine the amount of property due using a reasonable method of estimation[.]" (D.I. 83 at 7-10). Thus, Plaintiff contends that estimation will necessarily, and unlawfully, occur because: 1) the Subpoena requests documents dating back to 2000 (or perhaps longer)[6]; 2) Univar was not required to (and did not) retain documents back to 2000 (or earlier); and 3) in the absence of documents, the State will determine any amount owed by estimation. (*See e.g.*, D.I. 83 at 8 (regarding retroactive application, "Univar will be penalized (in the form of a mandatory unconstitutional estimation formula) for not having records that were not required by law to be kept"), at 9 (regarding retroactive application, "Under the amended DUPL and the Regulations, estimates are mandatory when a holder fails to maintain complete records sufficient to prove its unclaimed property liability in a given year in the audit period and there is no exception for Audits that were ongoing at the time the amended DUPL and the Regulations became effective.")).

---

[6]   The Court attempted to ascertain the date range at issue in the Subpoena during the June 3, 2022 teleconference, but neither party seemed able to clearly articulate it.

So too, Plaintiff's preemption arguments (ground 2) are rooted in estimation. (D.I. 83 at 10-14). Plaintiff argues that the use of estimation is preempted (and precluded) by federal common law, which requires the "precise debtor-creditor relationship" to be ascertained prior to escheating property. *See Delaware v. New York*, 507 U.S. at 499-500 (1993). According to Plaintiff, when using estimation the State simply assigns the amount of unclaimed property as a percentage of revenue "without ever identifying an actual debtor-creditor relationship upon which the estimate can be tied for the year or years that the estimate is intended to assess." (D.I. 83 at 12).

The concern raised by Plaintiff's focus on estimation is that Plaintiff has not yet produced a single document in connection with the Audit, Defendant asserts that estimation may not be used in the Audit, and no request for payment (let alone payment based on estimation) has been made. Thus, the Court must first consider whether Plaintiff's claims based on estimation are ripe.

    2.    <u>Ripeness of Claims Based on Estimation</u>

A federal court may not exercise jurisdiction over a dispute if it is not ripe for review. *See Thompson v. Borough of Munhall*, 44 Fed. App'x. 582, 583 (3d Cir. 2002). "The ripeness doctrine serves to determine whether a party has brought an action prematurely and counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine." *Khodara Envtl., Inc. v. Blakey*, 376 F.3d 187, 196 (3d Cir. 2004) (internal quotation marks and citation omitted). The purpose of the ripeness doctrine "is to prevent the courts . . . from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967), *abrogated on other grounds* by *Califano v. Sanders*, 430 U.S. 99 (1977); *accord Plains All Am. Pipeline L.P. v. Cook*, 866 F.3d 534, 539 (3d Cir. 2017).

9

As such, "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (explaining that Article III standing requires a party to "have suffered an injury" that is "actual or imminent, not conjectural or hypothetical.") (internal quotation marks omitted).

The ripeness inquiry in declaratory judgment cases like this one is generally guided by three key factors: "the adversity of the interest of the parties, the conclusiveness of the judicial judgment[,] and the practical help, or utility, of that judgment." *Siemens USA Holdings Inc v. Geisenberger*, 17 F.4th 393, 412-13 (3d Cir. 2021) (citations omitted). This analysis is sometimes referred to as the *Step-Saver* test. *Plains All Am.*, 866 F.3d at 540 (citing *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 647 (3d Cir. 1990)). When applying the *Step-Saver* test in the context of escheat challenges, the Court must differentiate between challenges to the scope of an escheat audit and challenges to a state's auditing authority. *Siemens*, 17 F.4th at 413. Of these, the latter "type has better odds of being ripe before an audit is complete." *Id.* (citing *Marathon Petroleum Corp. v. Sec'y of Fin.*, 876 F.3d 481, 499 (3d Cir. 2017)).

Here, the Court is convinced that Plaintiff's challenge to the claims based on estimation is directed to the scope of an audit and application of the *Step-Saver* factors counsels against finding that these claims are ripe. As an initial matter, Plaintiff does not contest the State's authority to "ask for documents to conduct an administrative investigation into [its] compliance with the escheat laws." (D.I. 99 (Tr.) at 4:24–5:5, 5:19–7:1). Notwithstanding that, Plaintiff has yet to produce a single document in connection with the Audit and the State has made no demands for payment. Further, although Plaintiff has represented (and the Court credits) that it does not have

10

complete records dating back to 1991 (D.I. 97, ¶¶ 48, 165),[7] that does not necessarily dictate that estimation will be used. Indeed, it appears that there may be more recent years for which Plaintiff does have complete records, such that estimation would not come into play under the UPL. How the State could properly exercise its authority to audit those years should the Court enjoin enforcement of the Subpoena is unknown.

Moreover, the State represents that it is by no means certain that estimation will be used even in the audit of earlier years. (*See* D.I. 99 (Tr.) at 21:24–22:18). According to the State, many audits (approximately 10%) end after the State asks for foundational documents, which is what the State has asked of Plaintiff to date. (D.I. 99 (Tr.) at 22:23–23:8). Also, according to the State, even if Plaintiff turns over incomplete documents for certain periods of time, it may choose not to estimate Plaintiff's liability, but instead to assess compliance based on the records that currently exist. (D.I. 99 (Tr.) at 29:2-13). Although the Court can speculate that estimation may indeed be used (or abused) in audits conducted by the State, no record has been made to that effect, and the Court cannot simply discount the State's representations at this stage. Indeed, the UPL does not require the State to use estimation, providing: "if a person subject to examination . . . does not retain records required . . . the State Escheator ***may*** determine the amount of property due using a reasonable method of estimation . . . ." (emphasis added). 12 Del. C. § 1176. The use of the term

---

[7]   It appears that the scope of the Audit may begin in 2000, although the initial inquiry seems to be dated back to 1991. During the June 3, 2022 teleconference, counsel for Plaintiff suggested that complete records are not available for years prior to 2012 (D.I. 99 (Tr.) at 8:25-9:3), but no evidence has been offered as to what documents exist other than the statement in the Amended (verified) Complaint that Plaintiff "does not maintain records going back to 1991." (D.I. 97, ¶ 165).

"may" rather than "shall" indicates that the State is permitted to use estimation, not required to do so.[8]

Turning to the *Step-Saver* test, the estimation-based claims are focused on the potential for the use of estimation to calculate liability – an "uncertain and contingent" event – such that the parties lack sufficient adversity to entertain these claims at this juncture.[9] *NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 342 n.9 (3d Cir. 2001). Although the expense of an administrative investigation may prove so onerous as to satisfy this factor, that cannot be said here where the State's administrative investigation is at its infancy and seeking only foundational documents. *See Plains All Am.*, 866 F.3d at 544. Last, declining to enjoin the State from enforcing the Subpoena would not cause "[h]ardship to the parties" because Univar acknowledges that the State has the right to conduct an administrative investigation into its compliance with the UPL and that there is at least some time period in the scope of the Subpoena for which estimation may not be used to assess its liability. (*See* D.I. 99 (Tr.) at 5:2-5:23, 9:13-9:25).

---

[8] Plaintiff points to Del. Admin. C. 336, § 104-2.18.2.1, which provides that "[i]f the Holder fails to retain sufficient dormant years of records, the Audit Manager and Holder shall discuss which records are to be utilized for the Base Period," to argue that estimation will necessarily be used. The cited regulation, however, mandates how estimation is to be conducted when estimation is used. It does not, however, compel use of estimation.

[9] The Court is mindful of the Third Circuit's discussion in *Siemens*, which states in part that "[the Third Circuit has] held there is sufficient adversity in an auditing-authority challenge when a state has actually requested information and the request is itself the claimed harm (*i.e.*, the challenged actions of the state during the audit have already occurred)." *Siemens*, 17 F.4th at 498-99. *Siemens*, however, involved very different facts from those present on the record here. There, the allegations were, *inter alia*, that "after an eleven-year saga," Siemens had "provided all records necessary" but Defendants refused to issue a final report. In other words, the allegations contested the state's authority to conduct any further audit proceedings. Here, the Audit has not really started, Plaintiff has not produced a single document, and Plaintiff acknowledges that there may be years during the audit period for which the State may conduct a legitimate audit (and may not resort to estimation).

As the claims based on estimation are not ripe, Plaintiff has failed to show a reasonable likelihood of success on those claims and the Court will not address the merits of those claims.

### 3. The Foreign Commerce Clause Claims

Plaintiff also challenges the fact that Delaware law and regulations permit the State to assert jurisdiction and take custody of property owed to an owner with a last known address in a foreign country. *See* 12 Del. C. § 1141(a)(3); 104 Del. Admin. C. § 104-2.2.2.3. It contends that asserting jurisdiction over the unclaimed property owned by one with a foreign address is preempted by the priority rules promulgated in the *Texas* trilogy line of cases and also violates the foreign commerce clause.[10] Defendants, of course, disagree, asserting that escheating such property "does not interfere with foreign commerce" and that it has a legitimate interest in such unclaimed property.

The Court initially notes that Plaintiff has made no showing at all that it, in fact, maintains custody of property owed to an owner with a last known address in a foreign country. Neither side, however, seems to dispute that Plaintiff does indeed hold such property or that the State will seek to escheat it. Thus, the Court will address the merits of Plaintiff's claim.

First, the Court agrees with Defendants that escheating unclaimed property whose last known owner had a foreign address is not preempted by the *Texas* trilogy line of cases. Preemption of state law by federal law can be express or implied. "'Express preemption occurs when a federal law contains express language providing for the preemption of any conflicting state law.'" *New Jersey Retail Merchants Assoc. v. Sidamon-Eristoff*, 669 F.3d 374, 389 (3d Cir. 2012) (quoting

---

[10]  The heading in its opening brief also suggests that Plaintiff contends this violates its due process rights and amounts to an illegal taking. (*See* D.I. 83 at 14-15). There is, however, no argument or support in the body of its briefs as to those issues and, therefore, they are not considered.

13

*Kurns v. A.W. Chesterton Inc.*, 620 F.3d 392, 395-96 (3d Cir. 2010)). "'Implied conflict preemption occurs . . . where state law stands as an obstacle for the accomplishment and execution of the full purposes and objectives of Congress'", *id.*, or "when 'compliance with both federal and state regulations is a physical impossibility,'" *Brown v. Hotel and Restaurant Empl. and Bartenders Int'l Union*, 468 U.S. 491, 501 (1984) (citations omitted)).[11]

Here, there is no express preemption. There is, as Plaintiff recognizes, "no language in the *Texas* cases giving authority to Delaware to take custody of property owed to owners with foreign last known addresses." (D.I. 83 at 14). There is, however, also no language expressly prohibiting Delaware from doing so. Nor can the Court find that Plaintiff is likely to succeed as to implied preemption. Indeed, Plaintiff makes no argument that the UPL "stands as an obstacle for the accomplishment and execution of the full purposes and objectives of Congress," or that "compliance with both federal and state regulations is a physical impossibility." Thus, there is no record on which the Court could find implied preemption.

Moreover, the Court finds that Plaintiff is not likely to succeed on its foreign commerce clause claim. The foreign commerce clause provides that "Congress shall have Power . . . To regulate Commerce with foreign Nations." U.S. Const., Art. I, § 8, cl. 3. In addressing a state tax, the Supreme Court advised that "[i]f the state tax 'is applied to an activity with a substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State,' no impermissible burden on interstate commerce will be found." *Japan Line, Ltd. v. Los Angeles Cnty.*, 441 U.S. 434, 444-45 (1979) (quoting *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279 (1977)). Here, the State appears

---

[11] "It is undisputed that state law can be preempted by federal common law as well as federal statutes." *New Jersey Retail*, 669 F.3d at 392 (citing *Boyle v. United Techs Corp.*, 487 U.S. 500, 518 (1988))

to be treating unclaimed property owed to creditors with foreign addresses consistent with how it treats unclaimed property belonging to Delawareans or individuals with no last known address. The State is not discriminating against foreign nationals and the escheated property has a substantial nexus to and is fairly related to Delaware, as the money to be escheated is currently being held by entities domiciled in Delaware. Accordingly, the Court is not persuaded that Plaintiff is likely to succeed in its foreign commerce clause claim.

### 4. Plaintiff's Claims Based on the Use of Kelmar

Finally, Plaintiff contends that its procedural due process rights are violated because Kelmar is paid on a contingent-fee basis (D.I. 83 at 16) and "Kelmar acts in a quasi-judicial capacity with the authority to make all substantive and procedural decisions about the Audit[.]" (*Id.*). Plaintiff also asserts that Kelmar decided to audit Univar because it is a large and profitable company, and that there is no rational basis for this arbitrary selection criteria. (*Id.* at 16–17). In response, Defendants first offer evidence that Kelmar is not paid on a contingent-fee basis. (*See* D.I. 91, Ex. A at 5; 12 Del. C. § 1178). Further, they assert that the State controls the Audit and that Kelmar merely acts as the State's agent. Last, they claim that the selection of Univar for an audit rests on the rational standards articulated in 12 Del. Admin C. § 104-2.12.4.

The Court does not find that Plaintiff's claims are likely to succeed on the merits. Based on the record, Plaintiff's bare assertion that Kelmar is paid on a contingent-fee basis is contradicted by evidence offered by the State. The State's contract with Kelmar provides that, except for securities-related work, Kelmar is be paid on an hourly basis. (*See* D.I. 91, Ex. A. at 5). This is consistent with what the law demands. *See* 12 Del. C. § 1178 (generally providing for paying contracted auditors on an hourly basis). Moreover, Plaintiff's assertion that Kelmar acts with unfettered discretion is presently unsupported. The regulations enunciated in 12 Del.

15

Admin C. §§ 104 *et seq.* were devised by the State and "are not discretionary, and third-party audit firms may not develop or utilize their own distinct applications of these standards and instructions." 12 Del. Admin C. § 104-2.1. Thus, although further factual development may prove that Kelmar enjoys unfettered discretion in a manner that offends the Constitution, the Court is unable to conclude that based on the record before it.

Further, the Court does not believe that Plaintiff is likely to succeed in its equal protection claim, because the selection criteria specified in 12 Del. Admin. C. § 104-2.12-4 appears properly geared toward scrutinizing entities who may not have complied with the escheat laws without regard for whether they are "large" or "profitable." *See, e.g.,* 12 Del. Admin C. § 104-2.12.4.2 ("When identifying a Holder to be examined, the State may consider . . . [a] comparison of a Holder's past reports to the reports of similar Holders within the same industry and of the same approximate size.").

### B. <u>Irreparable Harm</u>

To obtain a preliminary injunction, a plaintiff must "demonstrate that irreparable injury is likely in the absence of an injunction." *Winter,* 555 U.S. at 22; *accord Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 142 (3d Cir. 2017). "'The relevant inquiry is whether, at the time the injunctive relief is to be issued, the party seeking the injunction is in danger of suffering irreparable harm.' The irreparable harm alleged must be actual and imminent, not merely speculative." *Shabazz v. Delaware Dep't of Corr.*, C.A. No. 16-570-RGA, 2020 WL 998541, at *2 (D. Del. Mar. 2, 2020) (quoting *Friends of the Earth v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)).

Plaintiff submits that it will suffer irreparable harm if the State is not enjoined from enforcing the Subpoena and compelling it to comply with the document demands and Audit.

Univar asserts that forced compliance will harm it by exposing it to a loss of its constitutional rights in addition to escalating penalties and fees assessed upon a finding that it withheld unclaimed property from the State. *See* 12 Del. C. § 1183 (providing that "[i]nterest at 0.5% per month on outstanding unpaid amounts accrues from the date the amounts or property were due under this chapter until paid."). Further, Univar believes that it will be irreparably harmed because of the financial and operational burden associated with complying with the Audit, which will interfere with the company's operations for a lengthy period of time. Plaintiff cautions that these burdens may only increase as there is nothing stopping Kelmar from issuing additional requests.

At this stage, the Court does not find that Plaintiff will face irreparable harm in the absence of an injunction. The only thing that Plaintiff must do now is supply the State with documents in furtherance of an administrative investigation into whether Univar has previously complied with the UPL. The only burden that Plaintiff is certain to endure is gathering documents and transmitting them to the State. It has been remarked that "the costs of administrative investigations are usually not sufficient, however substantial, to justify review in a case that would otherwise be unripe," and though the context is different, the Court believes that the same logic can be extended to the irreparable harm analysis based on the circumstances of this case. *Plains All Am.*, 866 F.3d at 542; *see also Acierno v. New Castle Cnty.*, 40 F.3d 645, 653 (3d Cir. 1994) ("[T]he injury . . . must be of such a peculiar nature, so that compensation in money alone cannot atone for it.") (citations omitted). Plaintiff is not irreparably harmed by having to comply with an investigation that, at present, seeks nothing more than foundational documents to ensure past compliance with escheat laws.

Of course, Plaintiff's concerns of irreparable harm extend beyond merely supplying the State with documents. Univar contends that because it does not possess documents that it was not

17

required to keep, the State will eventually estimate its liability, resulting in an erroneously inflated assessment. As explained above, the Court can at this time only speculate about whether estimation will occur, and a finding of irreparable harm cannot be predicated on events that are markedly uncertain. *Cont'l Grp., Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980) ("The requisite for injunctive relief has been characterized as a clear showing of immediate irreparable injury or a presently existing actual threat."); *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987) (explaining that "[e]stablishing a risk of irreparable harm is not enough" to warrant injunctive relief); *Synthes, Inc. v. Gregoris*, 228 F. Supp. 3d 421, 440 (E.D. Pa. 2017) ("Any irreparable harm must be imminent.").

Although the Third Circuit has stated that "contingency does not prevent a finding of irreparable injury" the Court hesitates to overread that statement, which was made in reference to *New Jersey Retail Merchants Association v. Sidamon-Eristoff*, 669 F.3d 374 (3d Cir. 2012). *See Siemens* 17 F.4th at 409. In *New Jersey Retail*, the plaintiff challenged New Jersey's right to escheat certain property despite never being subject to enforcement under the challenged statute. Despite New Jersey not enforcing the statute against plaintiffs at the time of the suit, the plaintiffs were still irreparably harmed because they faced the prospect of either (1) complying with the statute, resulting in the loss of money it could not later obtain, due to sovereign immunity, if the statute was deemed unconstitutional, or (2) being assessed fines and penalties upon future enforcement for noncompliance. *Id.* at 388. Univar, however, does not find itself in that situation, because unlike the *New Jersey Retail Merchants* plaintiff, it concedes that the State has the right to audit it and escheat unclaimed property that is not based on estimation.[12] Moreover, because

---

[12]   Plaintiff is perhaps closer to the *New Jersey Retail Merchants* conundrum with respect to its claim that 12 Del. C. § 1141(a)(3) is preempted and unconstitutional. But the present record and posture does not support a finding of irreparable harm because Plaintiff has not

the State has not assessed Univar any money, it is not certain that there is currently interest accruing or penalties to be levied. The fact that Univar has yet to be assessed liability also distinguishes this case from *Siemens*, where the plaintiff was irreparably harmed because it either had to pay its assessed liability (that, like Univar, it challenged as being the product of unlawful estimation) or interest and penalties for noncompliance with the statute.

Thus, Univar has failed to establish that it faces irreparable harm in the absence of an injunction prohibiting the State's enforcement of the Subpoena.

### C. The Remaining Factors

The absence of either a reasonable likelihood of success or of irreparable harm is sufficient to deny Plaintiff's request for a preliminary injunction. *See, e.g., Am. Exp. Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 374 (3d Cir. 2012) (declining to analyze the remaining preliminary injunction factors because the moving party failed to show a likelihood of success on the merits); *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 219 (3d Cir. 2014) ("Absent a showing of irreparable harm, a plaintiff is not entitled to injunctive relief, even if the other three elements are found (citing *NutraSweet*, 176 F.3d at 153)). Thus, here, where Plaintiff has failed to establish a reasonable likelihood of success and that it would suffer irreparable harm without preliminary injunctive relief, the Court need not reach the remaining two factors.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion (D.I. 88) for a preliminary injunction enjoining Defendants from enforcing the Subpoena that was the subject of the Final State Court Order is denied. An appropriate order will follow.

---

submitted evidence that it has unclaimed property belonging to foreign nationals, and also because it is not seeking to enjoin the State from enforcing the statute in the future.